2014 PA Super 226

| D. SCOTT HAAN AND PATRICE AMITY HAAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JOHN A. WELLS, JOHN WELLS, JR., AND WILLIAM WELLS | |
| Appellee | No. 1895 MDA 2013 |

Appeal from the Judgment Entered on October 11, 2013
In the Court of Common Pleas of Lackawanna County
Civil Division at No.: 2011-CV-6813

BEFORE: LAZARUS, J., WECHT, J., and MUSMANNO, J.

OPINION BY WECHT, J.: **FILED OCTOBER 08, 2014**

D. Scott Haan and Patrice Amity Haan ("the Haans") appeal the trial court's October 11, 2013 order. In that order, the trial court denied the Haans' motion for post-trial relief and entered final judgments on the matter. We affirm.

In a memorandum opinion issued in support of the denial of the Haans' post-trial motions, the trial court set forth the factual and procedural history of this case as follows:

> [Appellants], D. Scott Haan and Patrice Amity Haan ("the Haans"), and [Appellees], John A. Wells, Jr., and his wife, Susan A. Wells ("the Wells"), are the owners of contiguous rural properties in Newton Township and Ransom Township, whose chains of title are traceable to the James Davis Warrant and the Stephen King Warrant that were conveyed by William Penn in the last 1700's. (Transcript of Proceeding ("T.P.") on 1/7/13 at pp. 98-99, 101; T.P. 2/27/13 at pp. 18, 21, 22, 25-27, 34-35,

37-38, 40-41, 51; Plaintiffs' Exhibit Nos. 1-5, 11; Defendants' Exhibit Nos. D1A-D1E). The Haans commenced this action against the Wells seeking to enjoin them from entering or encroaching upon two parcels that their surveyor, George Dunda ("Dunda"), identified as Encroachment Area #1 and Encroachment Area #2 on his survey. (T.P. 1/7/13 at pp. 69-70, 73, 89, 100, 103-105, 108; Plaintiffs' Exhibit Nos. 6, 19). Although mislabeled as new matter rather than a counterclaim, the Wells also requested affirmative relief via a trespass claim, and sought to compel the Haans to remove a gate barrier and signs that they erected on separate land which is designated as Parcel #2 on the survey prepared by John M. Hennemuth ("Hennemuth"). (Docket Entry No. 3 at ¶¶13-20, T.P. 1/7/13 at pp. 132, 135-37; Plaintiffs' Exhibit Nos. 18, 24; Defendants' Exhibit Nos. D2A-G).

Encroachment Area #1 and Encroachment Area #2 are relevant to the Haans' direct claim, whereas Parcel No. 1 and Parcel No. 2 are pertinent only to the Wells' counterclaim. The parties' surveyors both agreed that due to discrepancies in the metes and bounds descriptions contained in the original deeds for the James Davis Warrant and Stephen King Warrant, the boundaries of the land conveyed in those two Warrants overlap and create areas of "interference" that were first identified in a survey that Dunning Engineering Company conducted for the American Telephone and Telegraph Company ("AT&T") in 1953. (T.P. 1/7/13 at pp. 92-93; T.P. 2/27/13 at pp. 25-27, 33-35, 37-38, 40-41, 51). The survey calculations by Dunda and Hennemuth relating to that area of interference differ by 795 feet. (T.P. 1/7/13 at pp. 88-89).

In connection with the Haans' direct claim, Dunda prepared a survey designating Encroachment Area #1 as reflecting the 23.41 acre encroachment involving the Stephen King Warrant, and Encroachment Area #2 as depicting the 5.18 acre encroachment implicating the John King Warrant. (*Id.* at pp. 89, 103-105; Plaintiffs' Exhibit Nos. 6-7). Conversely, Hennemuth's survey focuses upon Parcel No. 1 (97.74 acres) and Parcel No. 2 (116.46 acres) which were conveyed to the Wells family by Andrew Walukus ("Walukus") on November 18, 1920 and July 2, 1924. (T.P. 2/27/13 at pp. 27-28, 53, 86-87; Plaintiffs' Exhibit Nos. 9-18, 24). Dunda's survey does not address the Wells' counterclaim regarding Parcel No. 2, and the Haans' counsel conceded at trial that Dunda "didn't . . . give any

opinion whatsoever as to the property being claimed by Wells" in the counterclaim. (T.P. 1/7/13 at p. 119).

The Haans established that they own 71 acres and 55 perches of property by virtue of a series of conveyances involving the Catherine Evans tract. (Plaintiffs' Exhibit Nos. 1-5, 11). Dunda surveyed that property on behalf of the Haans. (T.P. 1/7/13 at pp. 74/84, 97-98), and concluded that Encroachment Area #1 and Encroachment Area #2 are situated on the Haans' land. (*Id.* at pp. 89, 103-105). [Appellee] John A. Wells, Jr. testified that he and other members of his family have hunted on Encroachment Area #1 and Encroachment Area #2. (*Id.* at pp. 158-60). However, [Wells] admitted during his testimony that he does not claim ownership of that particular land. (*Id.* at pp. 145-52). [Appellant] D. Scott Haan testified that he filed this suit in order to bar the Wells from continuing to trespass upon Encroachment Area #1 and Encroachment Area #2.

The Wells' trial evidence primarily focused upon Parcel No. 2 and the Haans' trespass on that land. (T.P. 2/27/13 at pp. 131-140, 143, 145, 149-151). John A. Wells, Jr., testified that he owns Parcel No. 2 and pays real estate taxes for that land. (*Id.* at pp. 131, 145-46). Wells stated that he and his family have used Parcel No. 2 to hunt, ride all-terrain vehicles and pick berries, (*Id.* at pp. 131-132), but that Mr. Haan has now erected a gate blocking an access road and posted "private property" signs on that land without the Wells' permission.[1] (*Id.* at pp. 132-136, 143). D. Scott Haan admitted during his testimony that he installed a gate barrier on the access road in Parcel No. 2, and also posted "private property" signs on that property. (T.P. 1/7/13, pp. 109-114).

[1] The signs which have been posted on trees located in Parcel No. 2 identify "Haan" as the landowner, and state: "**POSTED:** PRIVATE PROPERTY. HUNTING, FISHING, TRAPPING OR TRESPASSING FOR ANY PURPOSE IS STRICTLY FORBIDDEN. VIOLATORS WILL BE PROSECUTED." (Defendants' Exhibit No. D2G).

The Wells also presented the expert testimony of Hennemuth, who has been a licensed professional surveyor since 1976 and has conducted "many, many surveys" in Newton and Ransom Townships, including surveys of properties that are contiguous to the parties' lands and which involve the James Davis Warrant, the Stephen King Warrant, the Methias Keppling Warrant, the

Adam Schrack Warrant, the William Smith Warrant, and the John King Warrant. (T.P. 2/27/13 at pp. 14-16, 18, 21-22, 114-115). Hennemuth opined that due to inaccuracies in the metes and bounds descriptions in the deeds for the James Davis Warrant and Stephen King Warrant, and the imprecision of early surveys of the rugged terrain comprising those Warrants, the boundaries of that land overlap and have created areas of "interference," which are designated as Encroachment Area #1 and Encroachment Area #2 on the Dunda survey. (*Id.* at pp. 25-27, 33-35, 37-38, 40-41, 51).

Unlike Dunda, Hennemuth devoted most of his trial testimony to Parcel #2 where the Haans have erected a gate barrier and posted signs based upon their claim of ownership of that land. Hennemuth stated that the "vaguely written description" of the property that the Wells' predecessor-in-title, Andrew Walukus, conveyed to the Wells family in 1920 and 1924 is attributable to an unreliable survey that was conducted with the Warrant Deed to James Davis on September 17, 1794. (*Id.* at pp. 61, 64-65). Those inaccuracies were later compounded by Lackawanna County's conveyance of 312 acres to Andrew Walukus via a deed which contains no metes and bounds description. (*Id.* at pp. 85, 87; Plaintiffs' Exhibit No. 10). The dimensions of the parties' properties were further complicated by the flawed boundary line designation for Newton Township and Ransom Township, as reflected in the 1903 survey by George Stephenson. (T.P. 2/27/13 at pp. 75-76, 80-81). As a consequence, boundaries indicated in the earlier deeds were "guesstimated" by "someone who had no idea" of the accurate dimensions since the descriptions contained in those deeds were not premised upon accurate surveys, or metes and bounds recitals, and did not "close mathematically." (*Id.* at pp. 90-91, 94, 113).

In formulating his professional opinions, Hennemuth reviewed the relevant deeds, prior land surveys, maps and tax assessment records, and conducted his own "field work" on the ground. (*Id.* at pp. 17-18). During the course of his survey of the land at issue, Hennemuth located concrete monuments, pins, and notched trees which he used to measure and plot accurate boundary lines and to calculate correct acreage for the property owned by the Wells. (*Id.* at pp. 19-23, 28). Hennemuth testified that the gate barrier situated on Parcel No. 2 is "well within the Wells' property." (*Id.* at p. 27). His conclusion that the Wells own Parcel No. 2 is corroborated by the 1953 Dunning survey, as well as by the pertinent tax maps and the

Lackawanna County tax assessment records memorializing the Wells' payment of property taxes for Parcel No. 2. (*Id.* at pp. 28-29, 45, 88-89, 93-96, 112-113, 117; Defendants' Exhibit No. 3).

Although the Haans did not offer any expert testimony to rebut Hennemuth's conclusions regarding Parcel No. 2, (T.P. 1/7/13 at p. 119), Mr. Haan introduced his own lay testimony in opposition to the Wells' claim of ownership of Parcel No. 2. Mr. Haan claimed that he acquired Parcel No. 2 at a tax sale, and later litigated a quiet title action involving ownership of that property. (T.P. 1/7/13 at pp. 123-125). However, he conceded that he did not name the Wells as parties in that quiet title action, nor did he serve them with any quiet title filings. (*Id.* at p. 125). More importantly, the Haans did not introduce a single document from the quiet title proceeding reflecting the boundaries, acreage or location of the land that they purportedly purchased at the tax sale. (Docket Entry No. 19 at pp. 4-5, 10-11).

After the parties filed their proposed findings of fact and conclusions of law on May 28, 2013, and June 11, 2013, (Docket Entry Nos. 17-18), a non-jury decision was issued on June 19, 2013. (Docket Entry No. 19). A verdict was entered in favor of the Haans with regard to their trespass claim based upon the finding that the Haans possess "title and ownership of Encroachment Areas #1 and #2," and "that the Wells have entered Encroachment Areas #1 and #2, albeit based upon the mistaken belief that the land was not owned by the Haans." (*Id.* at p. 9). As a result, it was determined that "[b]y virtue of the Wells' unprivileged and intentional intrusion upon Encroachment Areas #1 and #2, they are liable to the Haans for trespass and will be enjoined from any further unauthorized entry upon that property." (*Id.* at pp. 9, 12).

With respect to the Wells' trespass claim relating to Parcel No. 2, the Wells "presented credible testimony and documentary proof by John M. Hennemuth establishing the Wells' ownership of Parcel #2," including "the Dunning survey that was prepared for AT&T on December 1, 1953, [which] clearly identifies the Wells as the owners of the portion of Parcel #2 which is at issue." (*Id.* at p. 10) (citing T.P. 2/27/13 at pp. 94-96; Plaintiffs' Exhibit Nos. 18, 24; Defendants' Exhibit No. 3). The Haans' assertion "that they acquired a portion of Parcel #2 via a tax sale and subsequent quiet title action" was rejected since "the record [wa]s devoid of the requisite proof of that purported acquisition"

in that "[no] exhibits were admitted into evidence establishing the details of that alleged tax sale or the scope of the quiet title action." (Docket Entry No. 19 at pp. 10-11). Because "[t]he credible evidence established the Wells' ownership and right to immediate possession of the relevant portion of Parcel #2," the Haans were "directed to immediately remove the gate in question, which is identified in Defendants' Exhibits Nos. D-2E and D-2F, as well as all signs which have been posted on said property by the Haans." (*Id.* at pp. 11, 13).

On June 25, 2013, the Haans' trial counsel withdrew as counsel for the Haans, (Docket Entry No. 20), and their current counsel entered his appearance on July 1, 2013. (Docket Entry No. 21). On that same date, the Haans filed their [] motion for post-trial relief. (Docket Entry No. 22). The Wells [did] not file a post-trial motion challenging the non-jury verdict in favor of the Haans as to their claim involving Encroachment Area #1 and Encroachment Area #2.

The Haans advance[d] four arguments in support of their request for judgment *non obstante verdicto* (JNOV) with regard to paragraph 4 of the non-jury decision. First, the contend[ed] that any determination of the Wells' ownership of Parcel No. 2 was improper since the Wells raised that issue in new matter, rather than a counterclaim. (Docket Entry No. 24 at pp. 11-13.) Second, the Haans attack[ed] the expert opinions of Hennemuth on the grounds that those opinions allegedly lacked the requisite factual basis in that they were contrary to the chains of title and pertinent tax records, and conflicted with the verdict finding that the Haans are the owners of the Evans tract. (*Id.* at pp. 13-21). Third, the Haans maintain[ed] that the conclusion that the Wells are owners of Parcel No. 2 is contrary to "the weight of the competent evidence" establishing the Haans' ownership of that land. (*Id.* at 21-22). Last, the Haans contend[ed] that paragraph 4 of the non-jury verdict constitutes a "collateral attack" on the earlier quiet title determination secured by the Haans. (*Id.* at pp. 22-23).

The Wells assert[ed] that their "mislabeling of a properly asserted counterclaim as New Matter" was appropriately "treated as a *de minimus* defect," particularly since the Haans "were well aware" of the Wells' claim of ownership of Parcel No. 2 and their trial counsel actively defended against that claim. (Docket Entry No. 25 at p. 3). The Wells submit[ted] that Hennemuth's expert opinions were properly based upon his "vast experience in

- 6 -

surveying, especially with regard to the Wells' property and surrounding properties" in Newton Township and Ransom Township, and the conclusions contained in the 1953 Dunning survey. (***Id.***). The Wells posit[ed] that Mr. Haan's "misleading testimony regarding the quiet title action provides no substantiation to the [Haans'] claim of ownership" of Parcel No. 2. (***Id.***). Additionally, the Wells argue[d] that "[t]here is no cloud on the title to Parcel No. 2" inasmuch as the Haans' earlier quiet title proceeding "was directed to land that had no relationship to the Wells' conveyances or to Parcel No. 2." (***Id.***).

Oral argument on the Haans' post-trial motion was conducted on August 16, 2013. (Docket Entry No. 23). Following the Haans' submission of a letter brief on August 26, 2013, (Docket Entry No. 26), their post-trial motion became ripe for disposition. [The court concluded that] the Haans' post-trial arguments were waived since they were not properly preserved during trial. Nevertheless, in the interest of finality, [the trial court reviewed the merits of those claims, and found them to be without merit.].

Trial Court Opinion ("T.C.O."), 10/11/2013, at 2-9.

On October 23, 2013, the Haans filed a timely notice of appeal. The following day, the trial court directed the Haans to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 4, 2013, the Haans timely complied.[1]

The Haans submit the following five claims for our review:

A. Did the lower court commit a manifest abuse of discretion or error of law in concluding that by not requesting a non-suit after [the Wells'] case or a directed verdict at the conclusion

---

[1] The trial court did not file an opinion pursuant to Pa.R.A.P. 1925(a). Nonetheless, the court extensively discussed its rulings and the bases for those rulings, including those that the Haans contest herein, in its opinion authored in support of its denial of the Haans' post-trial motions. Thus, the lack of a Rule 1925(a) opinion does not hinder our review in any way.

of the trial, [the Haans] waived any right to argue on appeal that the Court's finding was against the weight of the evidence?

B. Did the lower court commit a manifest abuse of discretion or error of law in concluding that by not moving to strike the testimony of [the Wells'] surveyor after the conclusion of his testimony, [the Haans'] trial counsel waived any right to argue on appeal that the opinion of the surveyor was not supported by the facts of record?

C. Did the lower court commit a manifest abuse of discretion or error of law in finding that the testimony of the surveyor was sufficient to support [the Wells'] claim of ownership to Parcel [No.] 2 when his conclusion was contrary to the record and when his conclusion was based solely on his experience as a surveyor, not on the record facts?

D. Did the lower court commit a manifest abuse of discretion or error of law in concluding that [the Wells] presented sufficient evidence to support their claim of ownership of Parcel [No.] 2?

E. Did the lower court commit a manifest abuse of discretion or error of law in deciding that it could accept a part of the expert's survey which it believes supports [the Wells'] claims but reject other parts of that same survey which rebutted [the Wells'] claims, when the survey is an integrated document?

Brief for the Haans at 4.

Although the Haans present five distinct questions in their statement of the questions presented, they present only two broad arguments in the argument section of their brief. The first argument addresses the trial court's waiver decisions. The second addresses the merits of Haans' challenge to the evidence relied upon by the trial court. Thus, we first must consider whether any, or all, of the Haans' claims are waived for the purposes of this appeal. In its opinion denying the Haans' post-trial

motions, the trial court concluded, *inter alia*, that the Haans had waived any purported challenges to the sufficiency of the evidence because they had not moved the court for a directed verdict at any relevant time. *See* T.C.O. at 12 ("By neglecting to properly move for a directed verdict pursuant to Pa.R.C.P. 226(b), the Haans waived their right to secure judgment in their favor under Pa.R.C.P. 227.1(a)(2).") Additionally, the court found that the Haans had waived their challenge to the expert witness Hennemuth's testimony as being without a factual basis because the Haans did not specifically object to Hennemuth's testimony on that particular basis at trial. *Id.* at 18-19 ("[T]he Haans did not object to any opinion testimony by Hennemuth on the basis that it lacked factual support, as required by Pa.R.E. 702. Nor did the Haans present a motion *in limine* or a motion to strike Hennemuth's opinions for that reason. Indeed, the Haans did not assert *any* objection at trial to the opinion testimony of Hennemuth." (emphasis in original)). We begin with the trial court's conclusion that the Haans waived their right to challenge the sufficiency of the evidence.

In this case, the question of whether the Haans have waived certain challenges before this Court is dependent upon whether the claims challenge the sufficiency of the evidence or the weight of the evidence. After the non-jury trial, the Haans filed a post-trial motion for JNOV, in which they alleged that the trial court's conclusion that the Wells are owners of Parcel No. 2 is contrary to "the weight of the competent evidence." *See* Plaintiff's Motion for Post-Trial Relief Pursuant to Pa.R.C.P. 227.1 ("JNOV Motion"), 7/1/2013,

at 5 ¶ 37. Additionally, the Haans averred that the trial court's conclusion with regard to Parcel No. 2 was not "supported by the competent evidence at trial." *Id.* at ¶ 36. Thus, it is clear that the Haans, in their JNOV Motion, challenged both the sufficiency and the weight of the evidence underlying the trial court's decision. Each of challenges carries its own preservation requirements.

Pursuant to Pa.R.C.P. 227.1, "after trial and upon written Motion for Post-Trial Relief," a trial court may:

(1)    order a new trial as to all or any of the issues; or

(2)    direct the entry of judgment in favor of any party; or

(3)    remove a nonsuit; or

(4)    affirm, modify or change the decision; or

(5)    enter any other appropriate order.

Pa.R.C.P. 227.1(a). However, a trial court may only grant such relief if the "grounds therefore . . . were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial." Pa.R.C.P. 227.1(b)(1). One method for preserving issues at trial is by moving for a directed verdict. Pursuant to Pa.R.C.P. 226, "[a]t the close of all evidence, the trial court may direct a verdict **upon the oral or written motion of any party**." Pa.R.C.P. 226(b) (emphasis added).

Regarding the Haans' sufficiency challenge, our review of the record demonstrates that the Haans did not raise such a claim by oral or written

motion with the trial court either for a nonsuit or a directed verdict. In

***Bennyhoff v. Pappert***, 790 A.2d 313 (Pa. Super. 2001), we set forth the

following with regard to preserving a sufficiency claim:

> Pursuant to Pa.R.C.P. 230.1(c), a trial court may enter a nonsuit in favor of any or all [] defendants, if, at the close of the plaintiff's case against all defendants, the plaintiff has failed to establish a right to relief. "A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence." ***Harnish v. School District of Philadelphia***, 732 A.2d 596, 598 (Pa. 1999). A sufficiency of the evidence claim may also be raised through a motion for a directed verdict. ***Lear, Inc. v. Eddy***, 749 A.2d 971 (Pa. Super. 2000).

***Bennyhoff***, 790 A.2d at 371 (citation modified). Because the appellant in

***Bennyhoff*** failed to request either a nonsuit or a directed verdict, we

concluded that the appellant's sufficiency challenge was waived. ***Id.***

In ***Estate of Hicks v. Dana Companies, LLC***, 984 A.2d 943 (Pa.

Super. 2009) (*en banc*), an *en banc* panel of this Court noted that the

appellants in an asbestos case had preserved a challenge to the sufficiency

of the evidence by making an oral motion for a directed verdict at the close

of the evidence. ***Id.*** at 951 n.3 (citing ***Hayes v. Donohue Designer***

***Kitchen Inc.***, 818 A.2d 1287, 1291 n.4 (Pa. Super. 2003) (stating "cases

indicate that in order to preserve the right to request a JNOV post-trial[,] a

litigant must first request a binding charge to the jury or move for a directed

verdict at trial.").

Finally, our Commonwealth Court has recognized, and adopted, this

Court's adherence to the principle that sufficiency challenges must first be

raised before the trial court by a motion for a directed verdict.[2] In **Com. Dept. of Gen. Servs. v. U.S. Mineral Prods. Co.**, 927 A.2d 717 (Pa. Cmwlth. 2007), the Commonwealth Court, citing **Bennyhoff** and **Thomas Jefferson Univ. v. Wapner**, 903 A.2d 565, 570 (Pa. Super. 2006),[3] explained that "our Superior Court requires a motion for directed verdict during trial as a prerequisite to a post-trial motion for JNOV based on the state of the evidence." **U.S. Mineral Prods.**, 927 A.2d at 725. The Commonwealth Court adopted our approach "[b]ecause this approach has the salutary effect of submitting the issue to the trial judge for initial evaluation during trial, when the proofs are still fresh, and is consistent with past practice and with the current rule governing post-trial practice." **Id.** Consequently, the Commonwealth Court limited its appellate review in that case to the appellants' challenge to the weight of the evidence, and found any challenges to the sufficiency of the evidence to be waived. **Id.**

Hence, it is clear that, in order to preserve a challenge to the sufficiency of the evidence, the Haans first were required in this non-jury

---

[2] We note that "[t]his Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." **Petow v. Warehime**, 996 A.2d 1083, 1088 n.1 (Pa. Super. 2010) (citations omitted).

[3] In **Thomas Jefferson**, we explained, as we did in **Hayes**, that "[c]ases indicate that in order to preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for directed verdict at trial." 903 A.2d at 570.

trial to move either for a nonsuit or a directed verdict. *See Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1071 (Pa. Super. 2014). The Haans did not do so. Consequently, any of the Haans' challenges purporting to challenge the sufficiency of the evidence offered to prove the Wells' ownership of Parcel No. 2 are waived.

However, the same cannot be said for any challenges to the weight of the evidence. As the Haans aptly point out in their brief, *see* Brief for the Haans at 14, a litigant is not required to file a motion for a directed verdict to preserve a challenge to the weight of the evidence. Indeed, our Supreme Court has explicitly recognized that "a claim challenging the weight of the evidence is not the type of claim that must be raised before the jury is discharged. Rather, it is a claim which, by definition, ripens only after the verdict, and it is properly preserved so long as it is raised in timely post-verdict motions." *Criswell v. King*, 834 A.2d 505, 512 (Pa. 2003). Instantly, the Haans raised a challenge to the weight of the evidence in their JNOV Motion, and, therefore, have preserved that claim for appellate review.

In sum, if the challenges presented to this Court by the Haans are sufficiency challenges, they are waived. On the other hand, if they are weight challenges, they are preserved. Upon review of the details of the arguments presented in the Haans' brief, we conclude that the Haans are advancing a challenge to the weight of the evidence.

After addressing the trial court's waiver findings, the Haans address the merits of their claim. In the heading preceding their argument, the

Haans state that the trial court's decision "was not supported by **the weight of the evidence**," and that the trial court's factual determinations "were erroneous, arbitrary and capricious." Brief for the Haans at 21. Moreover, the Haans attack the trial court's credibility determinations, and cite cases addressing determinations that are "contrary to the evidence." *Id.* at 21 (citing *Glen Alden Coal v. Schuylkill Cty.*, 27 A.2d 239, 244 (Pa. 1942)).

The Haans conclude their introductory paragraph by submitting that "this case is one in which the lower court's decision was flagrantly contrary to the evidence and, as a result, an injustice has been done to the Haans."[4] Brief for the Haans at 22. The Haans argue that the trial court should not have credited the testimony of either the Wells or Hennemuth, because they each testified without factual support to render their testimony credible. *Id.* at 22-23. Also, the Haans argue that the trial court erred by crediting Mr.

---

[4] We are reminded of the famous exchange between the jurisprudential titans Justice Oliver Wendell Holmes, Jr., and Judge Learned Hand. Hand recounted as follows:

> I remember once I was with [Justice Holmes]; it was a Saturday when the Court was to confer. It was before we had a motor car, and we jogged along in an old coupé. When we got down to the Capitol, I wanted to provoke a response, so as he walked off, I said to him: "Well, sir, goodbye. Do justice!" He turned quite sharply and he said: "Come here. Come here." I answered: "Oh, I know, I know." He replied: "That is not my job. My job is to play the game according to the rules."

Learned Hand, A Personal Confession, in The Spirit of Liberty 302, 306-07 (Irving Dilliard ed., 3d ed. 1960).

- 14 -

Wells' testimony regarding the sale of portions of the contested lands over the testimony of Mr. Haan and over the details of the survey upon which the trial court actually relied. *Id.* at 24. Finally, the Haans argue that the trial court committed an abuse of discretion by relying upon, and presumably crediting for evidentiary purposes, portions of the Hennemuth survey, and disregarding other portions of the same survey. *Id.* at 25. These and other indicia throughout the argument section of the Haans' brief demonstrate that the Haans are challenging the weight of the evidence. As such, and for the reasons set forth above, this claim is preserved for purposes of this appeal.

Before we address the merits of the Haans' weight claim, we must address the Haans' argument that the trial court erred by concluding that they waived their claim that Hennemuth's expert opinion lacked a factual basis. However, upon close inspection of the Haans' brief and argument, it is clear that they are not challenging either the admissibility of Hennemuth's expert opinion or his qualifications to testify as an expert. Rather, the Haans are contending that, because Hennemuth's opinion was not supported by a factual basis, the trial court should not have relied upon that opinion in reaching its verdict. In other words, the Haans' argument with regard to Hennemuth is part and parcel of their weight challenge, a challenge that we have already concluded has been preserved. Thus, we consider the argument accordingly.

Our standards of review for considering motions for JNOV and claims implicating the weight of the evidence are well-settled.

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 260 (Pa. Super. 2014)

(citation omitted).

Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013) (citing

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). "The factfinder

is free to believe all, part, or none of the evidence and to determine the

credibility of the witnesses." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34

A.3d 1, 39 (Pa. 2011). The trial court may award a judgment notwithstanding the verdict or a new trial "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id.* (citing **Commonwealth v. Cousar**, 928 A.2d 1025, 1035-36 (Pa. 2007)). When a fact finder's verdict is "so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking. **Farelli v. Marko**, 502 A.2d 1293, 1295 (Pa. Super. 1985) (quoting **Green v. Johnson**, 227 A.2d 644, 644, 645 (Pa. 1967)).

In the trial court's opinion denying the Haans' post-trial motions, the trial court detailed at length the factual and legal bases for its verdict, as well as its credibility findings with regard to Hennemuth, a finding that the Haans challenge directly. The trial court explained as follows:

> On July 13, 1992, Parcel No. 1 and Parcel No. 2 were conveyed to [] John A. Wells, Jr., and his wife, Susan A. Wells. (Plaintiffs' Exhibit No. 9; Defendants' Exhibit No. D1A). Parcel No. 1 is described as being "situate in Ransom Township," beginning in the easterly corner "of the James Davis Warranty Tract of land which said tract of land was surveyed in pursuance of a warrant dated the 17th day of September 1794," and [c]ontaining One Hundred (100) acres of land, more or less." (**Id.** at p.2). The deed dated July 13, 1992, states that Parcel No. 1 excludes the following five prior conveyances that had been made from Parcel

- 17 -

No. 1: (1) an unquantified parcel that Warren P. Wells and Ella E. Wells conveyed to Lackawanna County and the Commonwealth of Pennsylvania on June 19, 1924; (2) a one acre parcel conveyed to John Bird; (3) a one acre parcel conveyed to George Bird; (4) one and one-half acres of land conveyed to Gwilym Niles; and (5) two and one-half acres of land on which the prior grantors' "dwelling house" was located. (*Id.* at pp. 2-3). Parcel No. 2 is identified as "situate partly in the Ransom Township and partly in the Newsome Township," consisting of "212 acres of land of the James Davis Warrant Tract," and comprising the same property that Lackawanna County conveyed to Andrew Walukus on May 25, 1908 "excepting One Hundred (100) acres of the aforesaid tract which was heretofore conveyed by the said Andrew Walukus to W.P. Wells, by deed dated November 18, 1921." (*Id.* at p. 2). The Walukus-Wells conveyance on November 18, 1921, references the earlier conveyance of Parcel No. 1 "containing One Hundred (100) acres of land more or less." (Defendants' Exhibit No. D1F).

The acreage identified in the pertinent deeds reflects that Parcel No. 1 contains "One Hundred (100) acres of land, more or less," excluding the six aggregate acres conveyed to John Bird, George Bird and Gwilym Niles and containing the prior grantors' home, and that Parcel No. 2 consists of One Hundred Twelve (112) acres. The boundaries and dimensions of Parcel No. 1 and Parcel No. 2 are only described in courses and distances. (Plantiffs' Exhibit No. 9 at pp. 2-3; Defendants' Exhibit No. D1A and pp. 2-3). Hennemuth's survey depicts Parcel No. 1 as comprising 93.46 acres and Parcel No. 2 consisting of 116.46 acres. (Plaintiffs' Exhibit No. 18).

"Where the calls for the location of boundaries to land are inconsistent, other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument), and thereafter to courses and distances." *Doman v. Brogan*, 592 A.2d 104, 110 (Pa. 1991). As a general rule, "where there is conflict between courses and distances or quality of land and natural or artificial monuments, the monuments prevail." *Jedlicka v. Clemmer*, 677 A.2d 1232, 1234 (Pa. Super. 1996). Thus, the courses and distances must yield to monuments on the ground, and parol evidence as to the existence of such monuments is admissible. *Penna. Elec. Co. v. Waltman*, 670 A.2d 1165, 1170-71 (Pa. Super. 1995).

The testimony of experienced surveyors, especially those familiar with the original monuments on the ground, "is extremely valuable in establishing the location of boundary lines." *Penna. Game Commission v. K.D. Miller Lumber Co., Inc.*, 656 A.2d 6, 11 (Pa. Cmwlth. 1994); *Will v. Pier*, 134 A.2d 41, 44 (Pa. Super. 1957). Hennemuth has extensive experience in conducting surveys relating to the various Warrants at issue in Newton and Ransom Townships, and relied upon that knowledge in conducting his survey and determining the Wells' boundary lines which were unclear due to the "vaguely written description" of the land in the Walukus-Wells deeds that were based upon the 1794 survey of the James Davis Warrant, the questionable designation of the Newton-Ransom boundary line in the 1903 Stephenson survey, and the absence of any metes and bounds description for the 312 acres that Lackawanna County conveyed to Walukus on May 25, 1928. Consequently, in calculating the boundaries of the Wells' land, Hennemuth reviewed relevant maps and deeds, earlier surveys, and pertinent tax assessment records, and conducted his own survey based upon concrete monuments, pins and notched trees from previous surveys. Based upon the totality of that investigation, he opined that the gate and signs installed by the Haans on Parcel No. 2 are "well within the Wells' property." (T.P., 2/27/13, at 27).

\* \* \*

Hennemuth's opinions regarding the location of the boundaries were based upon his own survey and his analysis of the 1953 Dunning survey, and as such, constituted competent and sufficient evidence of the Wells' boundary lines.

\* \* \*

The Haans contend[ed] that Hennemuth's conclusion concerning the Wells' total acreage was not competent since Mr. Haan "testified that he reviewed all of the deeds relating to transfers made by the Wells family of properties acquired from Mr. Walukus and stated that the total acreage of all of these transfers amounted to 133.71 acres." (Docket Entry No. 24 at p. 15; T.P. 2/27/13 at pp. 124-25). The Haans posit[ed] that as a result of that testimony, a finding should have been made that the Wells own less than one hundred (100) acres. (Docket Entry No. 24 at p. 15). However, in a bench trial, the trial judge "as factfinder, is free to believe all, part or none of the evidence presented and, therefore, assessments of credibility and conflicts

- 19 -

in evidence are for the trial court to resolve." ***Turney Media Fuel, Inc. v. Toll Brothers, Inc.***, 725 A.2d 836, 841 (Pa. Super. 1999). Mr. Haans' lay testimony regarding the Wells' purported conveyances, which was not supported by any corroborating deeds that were introduced into evidence, was contradicted by the testimony of John A. Wells, Jr., who stated that the Wells' predecessors-in-interest sold "some, but not a real lot" of the land that the Wells family purchased from Walukus. (T.P., 1/7/13, at p. 146). [The trial court accepted] Mr. Wells' testimony as more credible in that regard.

The Haans also assert[ed] that Hennemuth's expert opinion concerning the Wells' ownership of Parcel NO. 2 cannot serve as the basis for [] the non-jury verdict since "D. Scott Haan testified that he was the owner of the 116.46 acres depicted as Parcel [No.] 2 on the Hennemuth survey, having acquired the lands by tax title." (Docket Entry No. 24 at p. 21). As noted in the non-jury decision of June 19, 2013, the Haans did not introduce any documentary proof of "the details of that alleged tax sale or the scope of the quiet title action." (Docket Entry No. 19 at pp. 10-11). The only evidence presented in that respect was the bald and unsubstantiated claim of Mr. Haan. Once again, [the trial court resolved the] conflicts in the testimony of Hennemuth and Mr. Haan by finding that Hennemuth's opinions were more credible and persuasive in establishing the ownership of Parcel No. 2.

T.C.O. at 20-25 (footnotes omitted; citations modified; some citations to the record and to relevant case law omitted).

We have reviewed the record and the trial court's thorough consideration of the same, and we discern no abuse of discretion in the trial court's rejection of the Haans' weight of the evidence claim. As the trial court noted, a fact-finder is permitted to accept all, part, or none of the testimony, and it is within the fact-finder's exclusive province to resolve conflicts in that testimony. ***See Samuel-Bassett***, 34 A.3d at 39. As is indicated in the trial court's above-quoted discussion, that court resolved the

conflicts in the testimony and found Hennemuth's expert opinion to be more credible than that which conflicted with it. Having reviewed the record ourselves, we conclude that the court's credibility determinations were supported by the record. Consequently, the court did not abuse its discretion.

As we noted earlier, the Haans have listed five claims for our review, but the argument section of their brief presents only two broad questions. We have resolved of those both questions. Thus, although we conclude that the Haans did not waive the weight claim raised on the merits in their brief, we also conclude that they are not entitled to relief on that claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2014