J-S62028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL FLOSNIK<br><br>Appellant<br><br>v.<br><br>MOUNTAINEER HUNTING CLUB, AN UNINCORPORATED NONPROFIT ASSOCIATION; BRIAN O'SHELL, CLINT O'SHELL, IV; JAMES DISHONG, JOHN TUSAI; AND RYAN REIGER, INDIVIDUALLY AND AS CLUB MEMBERS AND BOARD MEMBERS<br><br>Appellees | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br>No. 715 WDA 2015 |

Appeal from the Judgment Entered April 20, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2009-1995-CD

BEFORE: GANTMAN, P.J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED DECEMBER 31, 2015**

The members of the Mountaineer Hunting Club ("the Club") voted to expel Michael Flosnik ("Michael") and his brother as members of the Club. In response, Michael filed an action for damages against the Club and the members who voted him out (collectively "appellees"). Michael now appeals from a judgment in his favor against all appellees in the amount of $2,450.00. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

A number of facts are not in dispute. The parties agree that the Club is a hunting camp in Utahville, Clearfield County, Pennsylvania that was founded in 1957 and has operated since then as an unincorporated nonprofit association. The Club's Bylaws limited membership in the Club to ten members; provided that a majority of the Club's members had to approve new members; set a monetary amount for a new member's full share in the Club; and established annual dues.

Over time, the price for membership in the Club increased from $150.00 to $800.00 per share. Beginning in 1969, the members added provisions to the Bylaws providing that upon the resignation or death of a member, his membership share would be repaid to him or his estate upon a majority vote of the members. The Bylaws did not include any provision covering the involuntary termination of a membership interest.

In 1977, Thomas Flosnik ("Thomas") became a member of the Club upon the transfer of his father's share in the Club. In 1985, Michael became a member of the Club upon a transfer of his grandfather's share. Such membership transfers were not out of the ordinary for the Club.

In or about 2008, a dispute arose between Michael and other members of the Club, in part because of Michael's poor performance of membership duties. One individual defendant, John Tusai, testified that members were

expected to attend work parties[1] and would be voted out of the Club if they failed to attend. N.T., 1/12/15 ("Tr."), at 73-74 (when asked what consequences would take place if he failed to attend, Tusai answered that "my perception would be that I'd be voted out of the camp"). Another individual defendant, Brian O'Shell, testified that members were expected to attend annual meetings. *Id*. at 85-86.

Michael testified that he "imagined" that "there was [an] expectation" that members were expected to show up and help at work parties. Tr., at 62. He also admitted that he never attended any organized work parties: "Well, these organized work parties, I'd have to say [I attended] none if they were held during the spring or summer, that type of thing, other than my own ability to go up." *Id*. He also admitted that the Club had an annual meeting each November, but that he only attended three such meetings during his years of membership. *Id*. at 55-56.

On November 30, 2008, the Club held its annual meeting with a quorum of four of the seven Club members in attendance. Neither of the Flosnik brothers attended, despite having received advance notice of the meeting indicating that members would be voted out of the Club. Exhibit P-14. The members in attendance unanimously voted the Flosniks out of the Club. Exhibit P-15. According to the meeting minutes, the reason for their

---

[1] We infer from the context that Tusai meant "work parties" to mean work details to keep the hunting camp clean.

expulsion was lack of participation in Club activities and differences with other Club members. *Id*. This was not the first expulsion in Club history. In 1994, Curtis O'Shell was voted out by other Club members for medical reasons and threatening behavior towards other members. Tr., at 90.

When a member resigned or was voted out, the Club reimbursed him an amount equal to the membership fee it would charge a new member. Tr., at 86-88. For example, when John Schademan resigned in 1994, the Club reimbursed Schademan $800.00, which other members deemed to be the value of his share. Tr., at 86-87. Following Schademan's resignation, the Club voted Brian O'Shell in as a new member and charged him $800.00 as a membership fee. Tr., at 88. Similarly, when the Club voted Curtis O'Shell out in 1994, the Club reimbursed him $800.00. Tr., at 90-91.

On July 6, 2009, Thomas executed a document assigning his interest in the Club to Michael. On October 9, 2009, Michael filed a civil complaint against the Club and the individual members who voted for his and Thomas' expulsion. Michael sought reimbursement for a sewage tap-ìn fee of $850.00 that he paid on behalf of the Club. Michael also claimed that his and Thomas' expulsion were illegal and wrongfully denied him the right to the ownership and/or use of the Club's real property. Because Michael and Thomas were two of the seven members at the time of their expulsion, Michael requested damages in the amount of 2/7th of the value of the Club's

real property, plus attorney fees.  Michael submitted an appraisal during trial that the Club's property was worth $65,000.00.  Plaintiff's Exhibit 1.

At the conclusion of a one-day non-jury trial, the trial court directed the parties to file briefs.  Tr., at 119-20.  Michael failed to request a directed verdict verbally at trial or in his original or supplemental post-trial memoranda.  Michael merely wrote in his opening memorandum that he "filed this suit to recover the value of his ownership interest in the property based on his and Thomas' wrongful expulsion from membership in the Club." Original Memorandum, at 5.

In an opinion and order dated March 16, 2015, the trial court entered a verdict awarding Michael his sewage tap-in fee of $850.00.  The court also awarded Michael $1,600.00, which represented reimbursement of the combined value of Michael's and Thomas' membership fees.  Opinion and Order, at 4.  Michael filed post-verdict motions seeking judgment n.o.v., which the court denied.  Michael reduced the verdict to judgment and then filed a timely appeal and a timely Pa.R.A.P. 1925(b) statement.  The trial court advised this Court that it would not file a Pa.R.A.P. 1925(a) opinion supplementing its March 16, 2015 opinion.  We conclude that the trial court's opinion in support of its verdict is sufficient for purposes of appellate review.

Michael raises the following issues on appeal:

1. Did the trial court err and/or abuse its discretion in failing to find that the involuntary expulsion of the Plaintiff and his brother from the Defendant Mountaineer Hunting Club was

totally unwarranted by the facts and circumstances of this case?

2. Did the trial court err and/or abuse its discretion in failing to find that the involuntary expulsion of the Plaintiff and his brother from the Defendant Mountaineer Hunting Club was neither authorized by the club's bylaws nor by any established policy, procedure, or precedent of the Club?

3. Did the trial court err and/or abuse its discretion in failing to find that the involuntary expulsion of the Plaintiff and his brother from the Defendant Mountaineer Hunting Club deprived them of their ownership interests in the Club for which they were entitled to an award of damages in an amount equal to the value of their ownership interests in the Club?

4. Did the trial court err and/or abuse its discretion in finding that the provisions of the Club's bylaws relating to the voluntary resignation or death of a member were applicable to the rights and interest of a member who was involuntarily expelled from the Club?

5. Did the trial court err and/or abuse its discretion in failing to award interest, costs and counsel fees to the Plaintiff?

Brief For Appellant, at 4-5. Michael contends that the Club wrongfully expelled Thomas and him as members, and as a result, he is entitled to judgment in the amount of 2/7[th] of the appraised value of the Club's real property, plus attorney fees. In procedural terms, each of his arguments claims that the trial court erroneously denied judgment n.o.v. to Michael.[2]

_____

[2] A motion for judgment n.o.v. is a post-trial motion which requests the trial court to enter judgment in favor of the moving party. There are two bases on which the court can grant judgment n.o.v.:

*(Footnote Continued Next Page)*

We hold that Michael has waived all issues in this appeal. To preserve a motion for judgment n.o.v. for appeal in a non-jury trial, the plaintiff/appellant must move for a directed verdict during trial.[3] *Haan v.*

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

> [O]ne, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Polett v. Public Communications, Inc.*, 83 A.3d 205, 212 (Pa.Super.2013). In an appeal from the trial court's decision to deny judgment n.o.v.,

> we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Id.* at 211.

[3] *Haan* also teaches that a defendant can preserve a motion for judgment n.o.v. for appeal by moving for a compulsory nonsuit at the close of the plaintiff's case. 103 A.3d at 67-68. Obviously, the option of requesting a compulsory nonsuit is not available to the plaintiff, who must await the close
*(Footnote Continued Next Page)*

*Wells*, 103 A.3d 60, 67-68 (Pa.Super.2014). A party may move for a directed verdict at the close of evidence via oral or written motion. Pa.R.Civ.P. 226(b). Failure to move for a directed verdict results in waiver of the right to seek judgment n.o.v. in post-verdict motions or on appeal. *Haan*, 103 A.3d at 67-68; *see generally* Standard Pa. Practice, § 64:2 (collecting cases). Because Michael did not move for a directed verdict at the close of evidence, either by verbal or written motion, his arguments in this Court are waived.

Even if Michael preserved his arguments for appeal, the evidence, construed in the light most favorable to the Club, *Polett*, 83 A.3d at 212, demonstrates that the Club had the right to expel Michael as a member. The trial court correctly observed:

> '[C]ourts will generally not inquire into the merits of a suspension or expulsion of a member from an unincorporated association, where the same has been accomplished in a regular manner and according to the procedures outlined by the association.' 3 P.L.E. § 3, Associations and Clubs; (citing *Appeal of Sperry*, 9 A. 478 (Pa. 1887); *Society for the Visitation of the Sick and Burial of the Dead v. Com.*, 25 Pa. 125 (Pa. 1866). Though the [Club's] bylaws are silent as to the matter of expulsion of a member, this Court does not find that manner of the Flosnik brothers' expulsion was irregular or unreasonable. Indeed, it would be unreasonable that an unincorporated association have no means to expel a member. In fact, though not in effect at the time the Flosnik brothers were expelled, Pennsylvania's current statutory law governing organizations such as the [Club] provides for the expulsion of

*(Footnote Continued)* ——————————

of all evidence before arguing that the evidence entitles him to judgment as a matter of law.

> members in exactly the same manner as has occurred here. 15 Pa.C.S. § 9126.

Opinion and Order, at 2 n. 1. We agree with the trial court that unincorporated associations such as the Club must have the right to expel uncooperative members. At least once before in its history, the Club exercised its power to expel an unruly member for threatening behavior towards other members. Here, individual Club members testified that Michael failed to honor his responsibility to attend work parties and rarely attended annual meetings. The other Club members understandably grew tired of Michael's irresponsible conduct and drummed him out of the Club.

Michael argued that he was entitled to 2/7th of the value of the Club's real estate because the Club *wrongfully* expelled him. He did not argue that he deserved the same award if the Club *properly* expelled him. Because the Club properly expelled him, he has no right to damages over and above what the trial court awarded. The trial court correctly limited Michael's recovery to the sewage tap-in fee (an item appellees did not dispute) and the value of Michael's and Thomas' membership fees ($800.00 apiece).[4]

Judgment affirmed.

---

[4] Whether Thomas had the right to assign his interest in the Club to Michael, and whether Michael had standing to seek damages on the basis of this assignment is not before us, because the Club did not file a cross-appeal challenging the trial court's award of Thomas' membership fee to Michael.

President Judge Gantman joins in the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/31/2015</u>