J-A13038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CNG CONVERSIONS & STATIONS, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| POWERFUEL CNG SYSTEMS, LLC, | : | |
| | : | |
| Appellant | : | No. 1113 WDA 2015 |

Appeal from the Judgment entered June 23, 2015
in the Court of Common Pleas of Allegheny County,
Civil Division, No(s): GD 14-009261

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 04, 2016**

Powerfuel CNG Systems, LLC ("Powerfuel") appeals from the judgment entered in favor of CNG Conversions & Stations, LLC ("CNG"). We affirm.

Powerfuel and CNG entered into a contract for CNG to purchase 12 compressed natural gas conversion kits ("kits") from Powerfuel.[1] The purchase price for each kit was $9,000.00. Pursuant to the contract, Powerfuel was also to provide a three-year warranty for the kits, and three days of training for each of the two types of kits purchased by CNG. Powerfuel thereafter provided a technician for three to four hours on one afternoon, and for an additional three to four hours on the following morning. Powerfuel provided no further training to CNG, despite its contractual obligations and CNG's formal request that it do so. During the

---

[1] The kits were to be installed by CNG into the gas-fueled vehicles of its customers, in order to permit the vehicles to use compressed natural gas as fuel.

brief training provided by Powerfuel's technician, the technician made a list of parts that were missing from the kits and took some of the defective parts back with him. Thereafter, CNG returned additional defective parts to Powerfuel, but no replacement parts were provided to CNG. CNG subsequently installed five incomplete kits on its own vehicles by taking parts from other kits supplied by Powerfuel.

In May 2014, CNG filed a Complaint against Powerfuel, asserting breach of contract because seven of the twelve kits were missing parts and/or contained defective parts. CNG sought damages relating to the cost of the seven kits, as well as lost profits of $2,000 per kit. Following a non-jury trial, the trial court entered a verdict in favor of CNG, and awarded damages in the amount of $63,000 and lost profits in the amount of $14,000. Powerfuel filed a post-trial Motion, which the trial court denied. Thereafter, Powerfuel filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Powerfuel raises the following claims for our review:

I.    Whether the trial court erred and/or abused its discretion in awarding [CNG] lost profits where its evidence of lost profits, if any, was overly speculative[?]

II.   Whether the trial court erred and/or abused its discretion in failing to consider [Powerfuel's] uncontroverted evidence that [CNG] failed to mitigate its damages, *inter alia*, by purchasing readily available replacement components from third parties[?]

Brief for Appellant at 4.

We must first consider whether any of Powerfuel's claims are waived for the purposes of this appeal. The question of whether Powerfuel has preserved its claims is dependent upon whether its claims challenge the sufficiency of the evidence or the weight of the evidence. *See Haan v. Wells*, 103 A.3d 60, 66 (Pa. Super. 2014). Each of these challenges carries its own preservation requirements. *Id*. In order to preserve a challenge to the sufficiency of the evidence, a litigant must move, at trial, either for a nonsuit or a directed verdict. *See id*. at 68; *see also* Pa.R.C.P. 227.1(b)(1) (providing that a trial court may grant post-trial relief only if the "grounds therefor . . . were raised in pretrial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial.").

Accordingly, to the extent that Powerfuel challenges the sufficiency of the evidence, it was required to raise such a claim by oral or written motion with the trial court, either for a nonsuit or a directed verdict. Our review of the record demonstrates that Powerfuel did not move either for a nonsuit or a directed verdict. Because Powerfuel did not do so, any challenge to the sufficiency of the evidence has not been preserved for our review. *See Wells*, 103 A.3d at 68.

However, Powerfuel was not required to file a motion for a directed verdict in order to preserve a challenge to the weight of the evidence. *See id*. (noting that a challenge to the weight of the evidence "ripens only after

the verdict, and it is properly preserved so long as it is raised in timely post-verdict motions.") (citation omitted). Instantly, Powerfuel raised a challenge to the weight of the evidence in its post-trial Motion, and, therefore, it has preserved that claim for our review.

> Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Brown v. Trinidad*, 111 A.3d 765, 770 (Pa. Super. 2015) (citation omitted); *see also Wells*, 103 A.3d at 70 (holding that the factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and that appellate relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion by the trial court).

In its first claim, Powerfuel contends that CNG's failure to offer testimony at trial with sufficient certainty or specificity precludes any recovery for lost profits. Brief for Appellant at 8. Powerfuel asserts that the mere possibility that CNG might have made a profit if Powerfuel had upheld its contractual obligations does not justify the imposition of damages for lost profits. *Id*. Powerfuel points to the following trial testimony of CNG's

owner, and claims that it constitutes speculation, which does not permit a reasonably certain estimate of the amount of anticipated profits:

> Q. All right. So you haven't been able to sell the pieces that you have?
>
> A. No, no.
>
> Q. All right. And if you did install these kits on a vehicle, did you anticipate receiving a profit from that conversion?
>
> A. Yes.
>
> Q. Approximately how much?
>
> A. We were thinking maybe $2,000 because it took us a couple, three days, three and a half days to complete it, road test it.

*Id*. at 9-10 (quoting N.T., 5/26/15, at 23).

Powerfuel also argues that, because CNG was a new company that had never purchased or sold a compressed natural gas conversion kit prior to its contract with Powerfuel, it had no record of profitability with which to quantify its lost profits. Brief for Appellant at 10-11 (citing N.T., 5/26/15, at 26-27). On this basis, Powerfuel contends that CNG is precluded from recovering damages for lost profits. Brief for Appellant at 11.

Our review of the record discloses that CNG's owner testified that it took CNG employees three and a half days to complete the installation of a kit, and that, based on the amount of labor expended by CNG to install and test each kit, CNG expected to realize a profit of $2,000 per kit. *See* N.T., 5/26/15, at 23. Although a Powerfuel representative testified that most of

its installers realize a profit of $1,000 to $1,200 per kit, based on the expenditure of approximately one day of labor to install each kit, **see id**. at 47-48, the trial court was free to reject the testimony of Powerfuel's representative and to believe instead the testimony of CNG's owner that CNG was never able to install a kit in a single day, and that other installers had told him that it had been taking them three to four days to install each kit.[2] **See** N.T., 5/26/15, at 23; **see also id**. at 33-34 (wherein a CNG technician testified that, even with the assistance of the Powerfuel technician, it took CNG employees 40 hours to install the first kit, and 32 hours to install the second kit). Because the record does not disclose a palpable abuse of discretion by the trial court, we reject Powerfuel's first claim.

In its second claim, Powerfuel contends that CNG had a duty to mitigate its damages by attempting to obtain replacement parts from a third party for the missing and/or defective parts. Brief for Appellant at 12. Powerfuel points to the trial testimony of its representative that replacement parts for the missing and/or defective parts were readily available from third-party suppliers, and that, if CNG had obtained replacement parts, its damages would have been reduced to $3,000 - $4,000. **Id**. at 13-14. Powerfuel asserts that, because CNG made no effort to obtain replacement

---

[2] **See** Trial Court Opinion, 9/16/15, at 3 (wherein the trial court indicated that it credited the testimony of CNG's owner regarding the profit contemplated by CNG for the installation of each kit).

parts, its recovery must be reduced by the amount of loss that could have been prevented if it had taken reasonable efforts to obtain replacement parts for the missing and/or defective parts. *Id*. at 14.

Our review of the record discloses that CNG's owner testified that he did not believe that he could go to a local auto store to buy replacement parts for the missing and/or defective parts in the kits supplied by Powerfuel. *See* N.T., 5/26/15, at 20-21, 22. CNG's owner also testified that he attempted to sell the kits with missing and/or defective parts to another installer, who refused to purchase the kits because of prior problems with the president of Powerfuel and issues with the harnesses. *See id*. at 22-23. Despite Powerfuel's testimony otherwise, the trial court chose to believe the testimony presented by CNG, and determined that CNG had established that there were no readily available replacement parts. *See* Trial Court Opinion, 9/16/15, at 3. Because the record does not disclose a palpable abuse of discretion by the trial court, we reject Powerfuel's second claim.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016