J-A16043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHASTITY V. NADAL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN BUCKWALTER | : | No. 1984 MDA 2019 |

Appeal from the Judgment Entered November 25, 2019
in the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2016-00160

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 15, 2020**

Chastity V. Nadal ("Nadal") appeals from the Judgment entered against

Shawn Buckwalter ("Buckwalter") in the amount of $916.56 in this case

involving a motor vehicle accident. We affirm.

The trial court summarized the facts underlying the instant appeal as

follows:

> A jury trial was conducted in the above-referenced case on
> July 16, 2019. Because the automobile accident in question was
> caused when [Buckwalter] drove his vehicle into the rear of the
> one operated by [Nadal], the defense admitted negligence prior
> to trial. The trial then took place on issues of causation and
> damages only.
>
> [Nadal] testified that she continued to her place of
> employment following the accident. Because she was feeling dizzy
> and ill, co-workers sent her to the Med-Express clinic. From there,
> [Nadal] was taken by ambulance to the Lebanon Good Samaritan
> Hospital. She was treated there and then released.
>
> [Nadal] continued to suffer neck and back pain for which she
> [was] treated [by] numerous medical providers. Ultimately, she

received several trigger point injections in her neck and back. At trial, [Nadal] testified that she continues to experience discomfort in her neck and back.

[Nadal] presented Dr. Fotis Mystakas [("Dr. Mystakas")] as her expert witness. Dr. Mystakas testified that he diagnosed [Nadal] with "chronic cervical strain." While Dr. Mystakas declined to declare [Nadal] to be permanently disabled, he did state that her prognosis was only "fair" and that she could be expected to continue to experience discomfort as a result of the accident.

[Buckwalter] pointed out to the jury that [Nadal] was operating a relatively large van, while [Buckwalter] drove a small Ford Focus. [Buckwalter] also presented photographs of his Ford Focus that depicted only minor damage. [Buckwalter] argued that [Nadal] could not have suffered extensive injuries as a result of such a minor accident.

In addition, [Buckwalter] presented Dr. Devanand Dominique [("Dr. Dominique")] as an expert witness. Dr. Dominique evaluated [Nadal] on one occasion and reviewed all of [Nadal's] medical records. Dr. Dominique opined that [Nadal] suffered a "mild cervical strain, mild left shoulder strain and a soft tissue injury to the left forehead." He defined cervical strain as "a soft tissue injury characterized by pain and soreness." He also stated that, by definition, a cervical strain will cause symptoms for only six (6) weeks.

Dr. Dominique testified that he palpated areas of [Nadal's] back during his examination. He described her complaints of pain as "mild and inconsistent." When asked to describe what he meant by "inconsistent," Dr. Dominique testified that [Nadal] would "wince" when he touched an area of her back. If he would touch the same area several minutes later, she would display no reaction. Dr. Dominique also indicated that all of [Nadal's] x-rays and MRIs were negative and that no evidence existed of any structural or nerve injury. Given everything, Dr. Dominique testified that [Nadal's] complaints were "difficult to understand."

Even though Dr. Dominique concluded that [Nadal's] complaints were difficult for him to understand, he stopped short of characterizing [Nadal] as a liar. In addition, while Dr. Dominique stated that he certainly would have approached [Nadal's] treatment in a manner different than her own doctors,

he would not characterize any of [Nadal's] treatment as "inappropriate."

After listening to everything, the jury … awarded [Nadal] the sum of $916.5[6].  This was the amount sought for past medical expenses and for past lost earnings.  However, the jury declined to award anything at all for pain and suffering.[FN]

---

[FN] The award was broken down as follows:  (1) $716.06 for past medical expenses; (2) $199.50 for past lost wages; (3) [$]0 for past, present and future pain and suffering.[1]

---

[Nadal] filed Post-Trial Motions.  A briefing schedule was established for the Post-Trial Motions.  Both parties filed briefs. Unfortunately, for some reason not known to [the trial court], the briefs were never forwarded to the [c]hambers of [the assigned trial court judge].  Because of this, th[e] jurist did not [write] a timely [o]pinion regarding the Post-Trial Motions.  Ultimately, the Post-Trial Motions were denied by operation of law.  An [a]ppeal was then filed.  When [the trial court judge] received the [a]ppeal paperwork, he solicited and received copies of the parties' briefs.

Trial Court Opinion, 2/2/20, at 2-4 (citations to Notes of Testimony omitted;

one footnote added; one footnote in original).  The trial court then issued an

---

[1] We note that the verdict, as set forth in the Notes of Testimony, states a combined award of medical expenses and past lost earnings of $916.56.  *See* N.T., 7/16/19, at 78.  However, the award of $716.06 for past medical expenses, $199.50 for past lost wages, and zero for pain and suffering, combined, totals **$915.56**.  No objection was made as to the mathematical error at that time.

Opinion pursuant to Pa.R.A.P. 1925(a).[2]

Nadal presents the following claims for our review:

A.  Whether a new trial on damages should have been granted when the jury's award regarding past medical expenses, past/lost earnings, and general damages was against the weight of the evidence[?]

B. Whether the trial court erred and/or abused its discretion by failing to grant [Nadal's] Motion for post-trial relief[?]

Brief for Appellant at 4 (initial capitalization omitted).

It is well-established that "[t]rial courts have broad discretion to grant or deny a new trial ... [and] absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." **Kindermann v. Cunningham**, 110 A.3d 191, 193 (Pa. Super. 2015) (internal citations and quotation marks omitted).

We will address Nadal's claims together, as they are related.  Nadal first claims that the trial court improperly concluded that the jury's damages award was not against the weight of the evidence.  **Id.** at 10.  Nadal argues that the jury's award "bore no reasonable relation to the injuries [she] suffered[.]" **Id.** at 14.  Relying upon the Pennsylvania Supreme Court's decision in **Davis v. Mullen**, 773 A.2d 764 (Pa. 2001), and this Court's decisions in **Aweigler v.**

---

[2] Nadal filed a Praecipe for judgment on November 25, 2019.  Accordingly, her appeal is now properly before us for review.  **See** Pa.R.A.P. 905(a)(5) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

*Detweiler*, 835 A.2d 764 (Pa. Super. 2003), and *Burnhauser v. Bumberger*, 745 A.2d 1246 (Pa. Super. 2000), Nadal asserts that the jury's award is contrary to the weight of the evidence. Brief for Appellant at 14. According to Nadal, there is no dispute that she had

> sustained injuries because of the accident and would have experienced pain and suffering. At a minimum, medically, Dr. Dominique opined that [Nadal] suffered a mild cervical strain, mild left shoulder strain, soft [t]issue injury to her forehead, and a concussion because of the accident. Dr. Dominique opined that a cervical strain and a shoulder strain are soft tissue injuries characterized by pain and a soreness with movement. Dr. Dominique indicated that a cervical strain is an injury that lasts at least six (6) weeks before it would resolve. As such, based upon [Buckwalter's] own doctor, [Nadal] would have had pain and soreness with movement for six (6) weeks. Thus, stronger than the plaintiff in *Davis*[,] and similar to the plaintiffs in *Zeigler* and *Burnhauser*, the jury's verdict/decision not awarding [Nadal] any general damages was against the weight of the evidence.

*Id.* at 14-15. Nadal, additionally, challenges the award of $199.50 for past/lost earnings, and $716.06 in past medical expenses, on the same basis. *See id.* at 15-16.

In her second claim, Nadal argues that the trial court erred in not granting her Motion for post-trial relief. *Id.* at 16. This claim is entirely premised on Nadal's first claim challenging the damages award as against the weight of the evidence. *See id.*

As this Court has explained,

> [a]ppellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration

to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Kindermann***, 110 A.3d at 193 (emphasis omitted).[3]

Further, we are cognizant that the jury, as fact finder,

is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice.  In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.  When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

***Haan v. Wells***, 103 A.3d 60, 70 (Pa. Super. 2014) (some citations, quotations, and quotation marks omitted).

---

[3] Buckwalter has filed an Application to Dismiss the appeal, based upon Nadal's failure to set forth in her Post-Trial Motion where, in the record, her claim was preserved.  ***See*** Application to Dismiss, 1/21/20, at ¶¶ 16-20.  However, because a weight claim, generally, may be raised for the first time in post-trial motions, we decline to dismiss the appeal on this basis.  ***See Criswell v. King***, 834 A.2d 505, 513 (Pa. 2003) (recognizing that a challenge to the weight of the evidence, generally, may be made for the first time in a post-trial motion).  ***But see Stapas v. Giant Eagle, Inc.***, 197 a.3d 244, 252 (Pa. 2018) (wherein the Pennsylvania Supreme Court held that a weight challenge "premised on trial errors, correctable before the jury is discharged," must be raised prior to the dismissal of the jury).

If there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact[ ]finder could have decided in favor of either party.

*McFeeley v. Shah*, 226 A.3d 582, 594 (Pa. Super. 2020) (citation omitted).

In its Opinion, the trial court extensively reviewed the applicable law, and concluded that Nadal's challenge to the verdict as against the weight of the evidence lacks merit. *See* Trial Court Opinion, 2/2/20, at 5-21. In particular, we acknowledge the trial court's conscientious analysis and discussion of the competing interests involved:

[T]he decision before this [c]ourt is by no means self-evident. There are legitimate factual arguments that can be made both for and against a new trial. Moreover, there is [a]ppellate precedent that could be cited in support of both possible outcomes. Stated simply, this is not an easy call.

In the end, [the court will] err on the side of respecting the decision of twelve unbiased citizens[,] whose sole purpose was to effectuate justice[,] given the facts presented before them. As our Commonwealth's highest Court proclaimed in *Davis*, it is not the job of this [c]ourt to usurp the function of a jury. Here, the jury obviously concluded that [Nadal] was exaggerating or fabricating her claim. While the jury wanted to ensure that the out[-]of[-]pocket expenses were compensated, the jury also wanted to send the message that it would not reward [Nadal's] exaggerations and/or fabrications.

From a very general perspective, the job of a judge is to respect and not second guess the decision of a jury. We will afford the jury's decision with the respect it deserves.

*Id.* at 20-21.

Although, as the trial court acknowledged, its decision was not an "easy call," we discern no abuse of discretion by the trial court in denying Nadal

- 7 -

relief on this claim. **See id.** at 5-21. Consequently, we affirm on the basis of the trial court's Opinion with regard to this claim. **See** Trial Court Opinion, 2/20/20, at 5-21.

Application to Dismiss denied. Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/15/2020</u>

ENTERED & FILED
PROTHONOTARY OFFICE
LEBANON, PA

2020 JAN -2 P 1: 38

# IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY PENNSYLVANIA

## CIVIL ACTION - LAW

CHASTITY V. NADAL,
    Plaintiff

        v.

SHAWN BUCKWALTER,
    Defendant

: NO. 2016-00160
:
:
:
:
:
:
:

**APPEARANCES**:

Scott Grenoble, Esq.              FOR PLAINTIFF

Seth Black, Esq.                 FOR DEFENDANT

## Opinion, Charles, J., January 2, 2020

A Lebanon County jury obviously believed that the PLAINTIFF was exaggerating or fabricating the nature and extent of injuries suffered in an automobile accident. While the jury did award medical expenses, it declined to award any monetary damages for pain and suffering. The PLAINTIFF now claims that the jury's decisions were inconsistent and the verdict was against the weight of evidence. While we acknowledge our decision is an extremely close call, we will err on the side of respecting the decision of twelve Lebanon County citizens who had no motive to do anything other than call it like they saw it.

1

## I. FACTS

A jury trial was conducted in the above-referenced case on July 16, 2019. Because the automobile accident in question was caused when the DEFENDANT drove his vehicle into the rear of the one operated by PLAINTIFF, the defense admitted negligence prior to trial. The trial then took place on issues of causation and damages only.

PLAINTIFF testified that she continued to her place of employment following the accident. Because she was feeling dizzy and ill, co-workers sent her to the Med-Express clinic. From there, the PLAINTIFF was taken by ambulance to the Lebanon Good Samaritan Hospital. She was treated there and then released.

The PLAINTIFF continued to suffer neck and back pain for which she treated with numerous medical providers. Ultimately, she received several trigger point injections in her neck and back. At trial, the PLAINTIFF testified that she continues to experience discomfort in her neck and back.

The PLAINTIFF presented Dr. Fotis Mystakas as her expert witness. Dr. Mystakas testified that he diagnosed PLAINTIFF with "chronic cervical strain". While Dr. Mystakas declined to declare the PLAINTIFF to be permanently disabled, he did state that her prognosis was only "fair" and that she could be expected to continue to experience discomfort as a result of the accident.

The DEFENDANT pointed out to the jury that PLAINTIFF was operating a relatively large van, while the DEFENDANT drove a small Ford

2

Focus. The DEFENDANT also presented photographs of his Ford Focus that depicted only minor damage. (*See*, Exhibit 8). The DEFENDANT argued that PLAINTIFF could not have suffered extensive injuries as a result of such a minor accident.

In addition, the DEFENDANT presented Dr. Devanand Dominique as an expert witness. Dr. Dominique evaluated PLAINTIFF on one occasion and reviewed all of PLAINTIFF's medical records. Dr. Dominique opined that PLAINTIFF suffered a "mild cervical strain, mild left shoulder strain and a soft tissue injury to the left forehead." (Dominique N.T. 21). He defined cervical strain as "a soft tissue injury characterized by pain and soreness." (N.T. 22). He also stated that, by definition, a cervical strain will cause symptoms for only six (6) weeks. (N.T. 33).

Dr. Dominique testified that he palpated areas of PLAINTIFF's back during his examination. He described her complaints of pain as "mild and inconsistent". (N.T. 12). When asked to describe what he meant by "inconsistent", Dr. Dominique testified that PLAINTIFF would "wince" when he touched an area of her back. If he would touch the same area several minutes later, she would display no reaction. (N.T. 15). Dr. Dominique also indicated that all of PLAINTIFF's x-rays and MRIs were negative and that no evidence existed of any structural or nerve injury. (N.T. 27). Given everything, Dr. Dominique testified that PLAINTIFF's complaints were "difficult to understand." (N.T. 25).

3

Even though Dr. Dominique concluded that PLAINTIFF's complaints were difficult for him to understand, he stopped short of characterizing PLAINTIFF as a liar. (N.T. 42). In addition, while Dr. Dominique stated that he certainly would have approached PLAINTIFF's treatment in a manner different than her own doctors, he would not characterize any of PLAINTIFF's treatment as "inappropriate". (N.T. 48).

After listening to everything, the jury empaneled in this case awarded PLAINTIFF the sum of $916.50. This was the amount sought for past medical expenses and for past lost earnings. However, the jury declined to award anything at all for pain and suffering.[1]

The PLAINTIFF filed Post-Trial Motions. A briefing schedule was established for the Post-Trial Motions. Both parties filed briefs. Unfortunately, for some reason not known to this Court, the briefs were never forwarded to the Chambers of the undersigned. Because of this, this jurist did not do a timely Opinion regarding the Post-Trial Motions. Ultimately, the Post-Trial Motions were deemed denied by operation of law. An Appeal was then filed. When this jurist received the Appeal paperwork, he solicited and received copies of the parties' briefs.

This Court will issue an Opinion today under Pa.R.A.P. 1925. We acknowledge that this Opinion should have been filed in response to PLAINTIFF's Post-Trial Motions. We apologize to all concerned for the tardiness of this Opinion.

---

[1] The award was broken down as follows: (1) $716.06 for past medical expenses; (2) $199.50 for past lost wages; (3) 0 for past, present and future pain and suffering.

4

## II.   DISCUSSION

### A. Arguments of the Parties

PLAINTIFF attempts to characterize the jury's verdict as against the weight of evidence. According to PLAINTIFF, it was inherently inconsistent for the jury to award money for medical expenses without any accompanying amount for pain and suffering. PLAINTIFF points out that even Dr. Dominique acknowledged that PLAINTIFF would have suffered pain for roughly six (6) weeks after the accident. PLAINTIFF argues that it was improper for the jury to refuse to award at least something for this six (6) week period of time.

The DEFENDANT responds by characterizing this accident as relatively minor. Given the totality of Dr. Dominique's testimony, the DEFENDANT argues that the jury was at liberty to conclude that the PLAINTIFF exaggerated and/or fabricated her complaints. In addition, the DEFENDANT also points out that PLAINTIFF was involved in a prior motor vehicle accident that caused her neck and back pain.

### B. Legal Principles

Both PLAINTIFF and DEFENDANT have cited numerous cases to support their respective positions. We have read all cases cited by the parties plus a few revealed by our own research. Upon superficial examination, the case law cited by the parties appears to be inconsistent. However, a closer examination of the applicable decisional precedent reveals some common themes that can be identified. We will begin with a

5

description of applicable cases. This description will be followed by a list of relevant issues we have gleaned from that precedent.

We will begin with the most recent and comprehensive proclamation by Pennsylvania's highest Court regarding the issue now before the Court. In *Davis v. Mullen*, 773 a.2d 764 (Pa. 2001), the Defendant's vehicle crossed the dividing line of a two-way road and collided head-on with the Plaintiff's vehicle. The Plaintiff was hospitalized briefly, but he returned to his work as a tractor-trailer driver three days after the accident. Moreover, the defense provided information that Plaintiff had been involved in three prior motor vehicle accidents.

At trial, the Defendant admitted liability but disputed the extent of the harm caused by the accident. The jury awarded Plaintiff $4,218.44 as compensation for his medical expenses and damage to personal property. Nothing was awarded for pain and suffering. Plaintiff filed a Motion for a new trial. The trial court denied that motion. Plaintiff appealed.

Pennsylvania's Supreme Court began its analysis by discussing the legal paradigm in cases where a jury refuses to award damages for pain and suffering:

> "This Court has previously upheld the authority of trial courts to order new trials where the jury's award of medical expenses, without awarding damages for pain and suffering, was inconsistent and totally inadequate". *See*, e.g., *Todd v. Bercini*, 371 Pa. 605, 92A.2d 538 (1952) and *Yacabonis v. Glivickas*, 101 A.2d 690(Pa. 1954). In both cases, the Plaintiff's injuries were too severe for the trial courts to have had a reasonable basis to believe that the jury's awards of medical expenses, without compensation for pain and suffering, was based on any

6

determination properly in province of the juries. Accordingly, we found that the trial court judges correctly granted the Plaintiffs new trials....

In the second line of cases, we focused on the power of the jury as the ultimate finder of fact and the need for the judiciary to guard against usurping the role of the jury. With these policies in mind, we have held that a jury award of medical expenses without a corresponding award of damages for pain and suffering, is not necessarily inconsistent. *See*, e.g. ***Boggavarapu v. Ponist***, 518 Pa. 162, 542 A.2d 516 (1988), ***Catalano v. Bujak***, 537 Pa. 155, 642 A.2d 448 (1994)."

**Id** at page 768.

The Supreme Court struggled to reconcile the disparate results reached in the above cases. Ultimately, the Court affirmed the trial judge's decision to deny a new trial. The Court stated:

"When a jury awards medical expenses, but declines to award damages for pain and suffering, the award may be inconsistent because pain usually follows injury. However, under the facts of this case, the Superior Court should not have disturbed the jury's verdict because the trial court had a reasonable basis to believe that: (1) the jury did not believe the Plaintiff suffered any pain and suffering, and/or (2) that a pre-existing condition or injury was the sole cause of the alleged pain and suffering.

In this case, the trial court found that Mullen's attorney was able to elicit testimony that undermined Davis' brief testimony about his pain and suffering. On cross-examination, Davis admitted that he did not miss any work as a result of the accident, he waited twenty days after the accident before visiting a doctor, he quit treatment only after twenty visits with the doctor, and he had not received any medical treatment for the injuries he claims to have suffered as a result of the accident since July of 1995. Davis' doctor also admitted that he could not say for certain if the spinal injury was related to the accident or whether it was caused by some other event.

7

The trial judge found that:

> "From the evidence presented, the jury could
> not believe that Plaintiff's pain was not a result
> of the accident, since he did not seek
> treatment from Dr. Owen until twenty days
> after the accident and then treated with him for
> a limited period. The jury could have believed
> that the Plaintiff suffered no pain."

*Davis v. Mullen*, Trial Court Opinion, July 9, 1999 at 9.

> Accordingly, we determine that the trial court properly
> exercised its discretion when it denied Davis' motion for
> a new trial because there was a reasonable basis for the
> jury to believe: (1) that Davis did not suffer pain and/or
> (2) that his alleged injury was not caused by the
> negligence of the Defendant."

**Id** at page 769-770.

Pennsylvania's Superior Court has addressed the "medical expenses but no pain and suffering" dilemma on multiple occasions. Beginning with the most frequently cited of *Burnhauser v. Bumberger*, 745 A.2d 1256 (Pa. Super. 2000), we will summarize the decisions of the Superior Court in chronological order:

- In *Burnhauser v. Bumberger*, 745 A.2d 1256 (Pa. Super. 2000), a jury found the DEFENDANT negligent with respect to causing a motor vehicle accident. The Superior Court described the issue of damages as follows:

> "On the issue of damages, Appellees' and Appellant's
> experts agree that Ms. Burnhauser sustained injuries as a
> result of the accident. However, they disagreed about the
> nature and the extent of the injuries. Appellant's expert,

a neurologist, Stephen Gollomp, M.D., conceded that Ms. Burnhauser suffered soft tissue injuries to the musculature and ligaments of the spine. However, Dr. Gollomp believed that these injuries should be resolved within six months of the accident. As reflected in the jury interrogatories, the jury found the Appellant negligently operated his vehicle, and Ms. Burnhauser suffered injuries as a result of his negligent operation. Nonetheless, the jury limited her recovery to an amount equal to her unreimbursed medical expenses, specifically $1, 257.24."

**Id** at page 1258.

Following the verdict, the Plaintiff filed a Post-Sentence Motion asserting that the verdict was against the weight of the evidence. The Court granted that motion. The Defendant appealed.

Pennsylvania's Superior Court emphasized that "Our Supreme Court has held that jury verdicts awarding zero damages are against the weight of the evidence where undisputed medical evidence reveals that the Plaintiff has suffered injuries in the accident that were of a type normally associated with pain and suffering." **Id** at page 1261. Because even the Defendant's expert agreed that Plaintiff's injuries would require six months to resolve, the Superior Court held that the jury's verdict should not be honored. The Superior Court stated:

"Based upon these findings [of negligence and causation], the jury was required at least to compensate Ms. Burnhauser for all damages related to her injuries that resulted from Appellant's negligence during that six month period. The jury should not have limited the damage award to her unreimbursed medical expenses. Clearly, these injuries are of the types that normally involve pain and suffering. The jury's verdict award neglected pain

9

and suffering. The trial court found that the award of no damages for pain and suffering to Ms. Burnhauser was contrary to the evidence. We agree."

**Id** at page 1261.

• In *Majczyk v. Oesch*, 789 A.2d 717 (Pa. Super. 2001), the Defendant's vehicle bumped the Plaintiff's vehicle from the rear at a speed of less than 5 miles per hour. As a result of this minor collision, the Plaintiff claimed to suffer from a cervical herniated disc. The Defendant challenged the Plaintiff's claim. At trial, the defense presented testimony from a doctor who testified that the Plaintiff reported she was "One hundred percent better" three weeks after the accident. In addition, the defense presented testimony from a doctor who reviewed records and disputed Plaintiff's theory of causation. The Superior Court refused to grant Plaintiff a new trial, characterizing the evidence as supporting the defense theory that the accident and resulting harm was "insignificant". The Court stated:

> "We recognize that Appellant presented contradictory testimony as to the severity of the impact and the extent and duration of her injuries; however, a jury is always free to believe all, part, some, or none of the evidence presented. Thus, while the jury may have concluded that Appellant suffered some painful inconvenience for a few days or weeks after the accident, it may also have concluded that Appellant's discomfort was the sort of transient rub of life for which compensation is not warranted. By our decision today, we are not suggesting that a jury cannot award pain and suffering for minor injuries. Rather, we hold that the determination of what is a compensable injury is uniquely within the purview of the jury. As a result, we find no abuse of discretion in the

10

trial court's refusal to grant a new trial based on the testimony set forth supra."

Id at page 725, 726.

- In **Zeigler v. Detweiler**, 835 A.2d 764 (Pa. Super. 2003), the Plaintiff alleged that she sustained injuries in a contested liability automobile accident. Following a trial, a jury found that Defendant was negligent and that the negligence was a substantial factor in causing the Plaintiff's injuries. The jury was asked two questions regarding damages. It was asked to assign an amount for past and future medical expenses and for past and future pain and suffering. The jury awarded $5,222 in the former category but nothing for pain and suffering.

  The Plaintiff filed a Post-Trial Motion. The trial court granted that motion and stated: "It is difficult for this Court to fathom that the [Plaintiff's] sudden need for medical care, in varying forms and degrees, was merely coincidental." Pennsylvania's Superior Court affirmed the decision of the trial judge and stated:

  > "The record supports the trial court's reasoning and the factual basis for its conclusion....the trial court in this instance did not abide by any *per se* rule in finding that it was improper for the jury to fail to award damages for pain and suffering where it had found the Defendant was responsible for injuring the Plaintiff. Rather, the court detailed its specific reasoning for finding the jury's award inappropriate. Based upon the testimony offered at trial the trial court concluded that the nature, extent and duration of Appellee's pain and suffering were not due solely to a pre-existing injury. It likewise found it was "simply not reasonable for the jury to conclude that the

11

Plaintiff experienced no pain and suffering" for which she must be compensated, particularly since the jury found all of Appellee's claimed medical expenses were caused by the accident. Thus, finding support in the record for the trial court's ruling, there was no abuse of discretion in determining that a new trial on the issue of damages was required."

**Id** at page 768-769.[2]

- In **Marsh v. Hainley**, 856 A.2d 138 (Pa. Super. 2004), the Defendant acknowledged liability in causing an accident. The issue of damages was tried before a jury. Medical experts on both sides conceded that the Plaintiff suffered some injury as a result of the accident; they disagreed about the severity of the injury. The jury awarded a verdict in the amount of $2,900, which was very close to the $2,909.88 that the Plaintiff sought in lost wages.

  The trial court denied the Plaintiff's request for a new trial. The Plaintiff appealed. Citing **Burnhauser**, the Superior Court awarded the Plaintiff a new trial. The Superior Court stated:

  > "Like in **Burnhauser**, the instant case involved more than a minor rear-end collision. Appellant's car was struck twice on the driver's side. An ambulance transported Appellant to the hospital; she suffered injuries which required her to take medication; her symptoms did not ameliorate for almost six months; and she lost considerable time from work. Unlike the Plaintiff in **Majczyk**, Appellant here suffered compensable injury, and we hold **Burnhauser** controls. We therefore reverse the trial court's Order denying a new trial on damages."

  **Id** at page 139.

---

[2] **Zeigler** represented a 5-4 majority of the Pennsylvania Superior Court *en banc*.

12

- In ***Womack v. Crowley***, 877 A.2d 1279 (Pa. Super. 2005), the Plaintiff's vehicle was rear-ended by a vehicle driven by the Defendant. The Plaintiff alleged that she suffered numerous injuries as a result of this accident. The Defendant provided evidence that Plaintiff had suffered a pre-existing back injury as a victim of a robbery. At the conclusion of the trial, the jury found the Defendant negligent and determined that this negligence was a substantial factor in bring about harm to the Plaintiff. The jury the awarded an unallocated amount of $6,000 in damages. Plaintiff then filed Post-Trial Motions alleging that the verdict was against the weight of evidence.

The Superior Court cited prior Superior Court decisions in ***Burnhauser*** and ***Marsh***. The Court emphasized that the award of the jury reflected the exact amount that Plaintiff had sought in medical expenses. Because the jury awarded nothing for pain and suffering, a new trial was awarded:

> "We find that the present case is controlled by ***Burnhauser*** and ***Marsh.*** Similar to those cases, the jury award in the present case reflects the exact amount of the future surgery as testified to by Dr. Stark and awards no amount for pain and suffering. While the severity of the impact in this case was disputed by the parties, the jury clearly found that Crowley's negligence was a substantial factor in causing her injuries. Thus, because the torn meniscus and back sprain are the type of injuries which we have previously found to involve pain and suffering, we find that the jury's award bears no reasonable relation to the injuries suffered by Womack....Accordingly, we

affirm the trial court's Order granting a new trial as to the issue of damages."

Id at page 1284.

- In *Kopytin v. Aschinger*, 947 A.2d 739 (Pa. Super. 2008), the Plaintiff's car was rear-ended by one driven by Defendant. The Plaintiff allegedly suffered post-traumatical cervical and lumbar strain that disabled him from employment for two months. However, surveillance video was also shown to the jury that depicted the Plaintiff carrying "heavy bags of groceries" in a manner inconsistent with his claim for damages. Following a trial, the Defendant was awarded medical expenses in the amount of $2,540.92. Nothing was awarded for pain and suffering.

The Superior Court awarded a new trial on damages to the Plaintiff. Citing *Burnhauser, Womack* and *Marsh*, the Superior Court stated:

> "In each of these cases, we ruled that the jury award – in the first instance for the cost of a future surgery, in the second for lost wages, and in the third, for unreimbursed medical expenses – failed to provide restitution for compensable injuries, that is, for pain and suffering related to injuries of a type which normally, and recognizably afflict the injured party, causing pain and suffering. That is the case herein. Appellant's injuries, which the jury clearly believed, were the result of an accident caused by Appellee, and were severe enough in the jury's view to require a course of medical treatment which the jury also believed to be compensable, hence the award for unreimbursed medical cost. In failing to compensate Appellant for the pain and suffering which is normally associated with the type of harm he suffered at

14

Appellee's hands, the jury returned a verdict which "bears no reasonable relation to the injuries suffered" by Appellant. Under such circumstances, the award of unreimbursed medical expenses only was inadequate, and the order denying Appellant a new trial on damages must be reversed."

Id at page 743-744.

As indicated above, the above cases have reached disparate results. In *Davis* and *Majczyk*, the Plaintiff receiving zero damages for pain and suffering was denied a new trial. In *Burnhauser*, *Marsh*, *Ziegler*, *Womack* and *Kopytin*, the Plaintiff was awarded a new trial on the issue of damages. How can these disparate results be reconciled?

We have carefully considered all of the language employed by our Appellate Courts in the cases cited above. From that language, we perceive that the following areas of inquiry were relevant to our appellate courts:

(1) *What did the defense doctor opine?* The key evidence that needs to be examined in order to decide whether to award another trial is the evidence presented by the Defendant's physician. If the Defendant's physician confirms that the Plaintiff suffered some degree of injury, then an award of a new trial will be more likely.

(2) *How significant was the accident and the Plaintiff's initial injuries?* Where the collision was violent and emergency medical transportation was required, the Appellate Courts will be more likely to overturn a jury's decision not to award damages for pain and suffering.

15

(3) *Was the Plaintiff involved in a prior motor vehicle accident to which the current harm could conceivably be attributed?* If in fact there is evidence from which a jury could infer that a Plaintiff's existing problems were caused by an unrelated prior accident, then our Appellate Courts will be more likely to affirm a jury's decision not to award damages for pain and suffering.

(4) *For what medical services were damages awarded?* If a jury awards a relatively large amount of money for medical services spaced over a relatively significant period of time, a decision to decline an award of pain and suffering will be scrutinized far more carefully than if the medical expenses were relatively small and confined to a brief period of time.

(5) *Is there evidence that the Plaintiff has intentionally fabricated or exaggerated claims?* While this has never been cited as a conclusive or *per se* reason for denying a new trial, the Appellate Courts have cited inconsistencies in the presentation of a claim as a factor to be considered.


C. Analysis

In rendering a decision, we will apply the facts of this case to the areas of inquiry outlined above:

16

## (1) Testimony of Dr. Dominique

Dr. Dominique presented testimony that both favors and disfavors the award of a new trial. On the one hand, Dr. Dominique called into question the PLAINTIFF's veracity. He described inconsistent reporting of discomfort, and he described the PLAINTIFF's complaints as "difficult to understand". On the other hand, Dr. Dominique did agree that PLAINTIFF suffered a cervical strain. He described a cervical strain as a soft tissue injury that was "characterized by pain and soreness." In addition, Dr. Dominique repeatedly emphasized that the PLAINTIFF's problems should have lasted for six (6) weeks following the accident. This is six (6) weeks for which the jury should have awarded damages for pain and suffering.

In terms of a decision regarding a new trial, we view Dr. Dominique's testimony as a quintessential "mixed bag". We will not weigh it either for or against the award of a new trial.

## (2) Severity of Accident and Initial Injuries

The accident in this case was clearly minor. Exhibit 8 is a packet of photographs of the DEFENDANT's Ford Focus vehicle. The property damage suffered to that Ford Focus was subtle and difficult to notice in the photographs. The jury could clearly perceive that a collision involving significant velocity would have caused greater property damage. Moreover, no ambulance was dispatched to the scene of the accident, nor did the

PLAINTIFF immediately seek treatment.[3] From all of the evidence presented, we conclude that this area of inquiry must be weighed against the award of a new trial.

### (3) Prior Accident

On cross-examination DEFENDANT's counsel was able to establish that PLAINTIFF had been involved in a prior motor vehicle accident in 2006. (Trial N.T. 31). As a result of that prior accident, the PLAINTIFF was treated in an Emergency Room and she suffered cervical and shoulder pain for an undisclosed period of time thereafter. (N.T. 31-32). PLAINTIFF did not disclose this prior accident to her own doctors or to Dr. Dominique. However, Dr. Dominique testified that he reviewed all of PLAINTIFF's medical records, including those related to her prior accident. (N.T. 18). Ultimately, Dr. Dominique opined that PLAINTIFF's prior accident was not particularly relevant to the question he was asked to address. (N.T. 38). The existence of a prior accident is a factor that could be weighed against the award of a new trial. However, Dr. Dominique's opinion that the prior accident was not particularly relevant must be afforded great weight. Ultimately, we will not weigh this factor as a reason to deny a new trial.

### (4) Medical Expenses

The jury in this case awarded $716.06 in medical expenses. While this is a relatively small amount, focusing solely upon the number would not

---

[3] To be sure, we are aware that the PLAINTIFF was transported by an ambulance to the hospital from the MedExpress clinic where she sought treatment within hours after the accident.

18

necessarily be fair. Unlike the jury, we are aware that some of PLAINTIFF's medical expenses were paid by her own insurance and that these amounts were neither sought nor proven at trial. That being said, the jury did hear about medical treatment that extended for years past the accident. Moreover, that medical treatment was deemed reasonable by Dr. Mystakas, and Dr. Dominique refused to declare the treatment to be "inappropriate". (N.T. 47). Once again, there is no clear lesson to be gleaned from analyzing the jury's award of medical expenses and we will not weigh this factor for or against the award of a new trial.

### (5) Inconsistencies

It is beyond question that the jury found the PLAINTIFF's credibility to be suspect. Had the jury believed the PLAINTIFF, the verdict would have been far different. The question that must be asked today is: "Is there competent evidence today to support the jury's decision to disbelieve the PLAINTIFF?" The answer to this question is a resounding "Yes". Here, the jury saw photographs of the DEFENDANT's Ford Focus that depicted almost no physical damage. The jury learned that PLAINTIFF declined to report a prior accident in which her neck and back were injured. In addition, the jury heard how the PLAINTIFF provided "inconsistent" responses to Dr. Dominique's palpation. There were absolutely no objective tests that corroborate the PLAINTIFF's subjective claims of pain. Moreover, Dr. Dominique testified that he found PLAINTIFF's claims "difficult to understand". From all of the above, the jury had ample evidence from which

19

to conclude that PLAINTIFF's testimony should not be believed. This is a factor that must be weighed against the award of a new trial.

Where does the above leave us? The answer is...somewhat perplexed. On the one hand, the jury obviously found that the accident caused PLAINTIFF to suffer a cervical strain. Even the DEFENDANT's own doctor acknowledged that cervical strains require six (6) weeks to heal and that they are characterized by "pain and soreness." Logically, the jury should have awarded something for this six (6) week period of pain and soreness suffered by the PLAINTIFF. On the other hand, there is ample evidence that the accident in question was a minor low-velocity collision. In addition, there was ample evidence that the PLAINTIFF fabricated or exaggerated the extent of her problems. From this evidence, the jury obviously discounted the PLAINTIFF's credibility.

As indicated above, the decision before this Court is by no means self-evident. There are legitimate factual arguments that can be made both for and against a new trial. Moreover, there is Appellate precedent that could be cited in support of both possible outcomes. Stated simply, this is not an easy call.

In the end, we will err on the side of respecting the decision of twelve unbiased citizens whose sole purpose was to effectuate justice given the facts placed before them. As our Commonwealth's highest Court proclaimed in *Davis*, it is not the job of this Court to usurp the function of

a jury. Here, the jury obviously concluded that the PLAINTIFF was exaggerating or fabricating her claim. While the jury wanted to ensure that out of pocket expenses were compensated, the jury also wanted to send the message that it would not reward the PLAINTIFF's exaggerations and/or fabrications.

From a very general perspective, the job of a judge is to respect and not second guess the decision of a jury. We will afford the jury's decision with the respect it deserves.

## III.   CONCLUSION

We have heard jury trials described as "a crap shoot", "a roll of the dice" and "a flip of the coin." All of these metaphors emphasize that jury trials are seldom predictable. PLAINTIFF knew, or should have known, that a complete washout was possible. Yet she proceeded to trial. We will not afford her with a proverbial second bite at the apple simply because the outcome of her trial was not to her liking.

We issue this Opinion today to express our opinion, for whatever it is worth, that the decision of the jury should be respected. Accordingly, we recommend to the Pennsylvania Superior Court that the judgment in this case be affirmed.

21