2023 PA Super 248

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC. AND ALAN CHRISTOPHER REDMOND | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| JASON SCOTT JORDAN | : : : | No. 642 MDA 2022 |
| APPEAL OF: ALAN CHRISTOPHER REDMOND | : : : | |

Appeal from the Judgment Dated December 20, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
14-17117

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:                    **FILED: NOVEMBER 29, 2023**

Alan Christopher Redmond appeals from the judgment, entered in the Court of Common Pleas of Berks County, entered on the verdict and sanctions imposed against him in the amount of $13,105,197.20.[1]  Upon review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Judgment was entered against Redmond on December 20, 2021.  On December 30, 2021, Redmond filed a post-trial motion.  However, on December 3, 2021, prior to both the verdict and Redmond's post-trial motion, Redmond filed a notice of appeal to this Court, docketed at 1621 MDA 2021, from a November 3, 2021 order granting sanctions against Redmond for failure to pay his own counsel.  Ultimately, on March 11, 2022, this Court quashed Redmond's appeal at 1621 MDA 2021, **see** Order, 3/11/22, at 1, and
*(Footnote Continued Next Page)*

In February of 2013, Redmond was the sole owner and operator of National Brokers of America, Inc. (NBOA). Redmond operated NBOA as an insurance sales call center. During this period, NBOA was unprofitable and on the brink of financial failure. Redmond induced Jason Scott Jordan (Jordan) to relocate to Pennsylvania from Florida and work for NBOA. Jordan had 13 years of professional experience in sales and management of insurance call centers. Jordan relocated his family to Reading, Pennsylvania, in order to work at NBOA. On July 13, 2013, Jordan entered into an Employment

_____

on March 31, 2022, the trial court denied Redmond's post-trial motion. On April 19, 2022, Redmond filed the instant timely notice of appeal, in which he purports to appeal from the March 31, 2022 order denying his post-trial motion. However, in a civil case, an appeal "can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." **Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (en banc) (citation omitted); **see also Angelichio v. Myers**, 110 A.3d 1046, 1048 (Pa. Super. 2015) ("As a general rule, this Court has jurisdiction only over appeals taken from final orders.").

Additionally, we note that despite the then-pending appeal at 1621 MDA 2021, the trial court possessed the authority to enter its verdict and judgment against Redmond on December 20, 2021. **See Christian v. Pennsylvania Fin. Responsibility Assigned Claims Plan**, 686 A.2d 1 (Pa. Super. 1996) (order granting discovery sanctions is interlocutory and not generally subject to appeal until underlying case completed); **see also** Pa.R.A.P. 1701(b)(6) (after an appeal has been taken, trial court may "proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal[.]"). Accordingly, we have corrected the caption, and conclude that we have jurisdiction to entertain the instant appeal.

- 2 -

Agreement with NBOA.[2]   The Employment Agreement required any modifications to be made in writing.

Between July 31, 2013 and October 31, 2013, NBOA paid Jordan $23,778.00 less than the sum due under the Employment Agreement. Consequently, Redmond offered to compensate Jordan with equity, by offering 50% of NBOA's non-voting stock to Jordan.  Jordan declined, because such an agreement would leave Redmond as sole voting shareholder.  After some negotiation, Redmond and Jordan, by way of a Shareholders' Agreement, dated November 1, 2013, became 50/50 shareholders of NBOA.  Both Redmond and Jordan would have exactly one voting stock, with those two shares comprising all of NBOA's issued stock.  Redmond then confirmed Jordan's 50% ownership of NBOA by directing the accountant to list Redmond and Jordan as 50/50 owners of NBOA stock in NBOA's 2013 tax returns.[3]

From approximately November 2013 until August 4, 2014, Redmond and Jordan took equal pay, took equal distributions, and acted at all times as having equal authority in the management of NBOA.  Redmond and Jordan were NBOA's only shareholders and the only directors.  Under the Amended

---

[2] NBOA and Jordan agreed to a bi-weekly commission payment, based upon Jordan's performance at NBOA.  **See** Defendant's Answer to Complaint and New Matter, 12/11/14, Ex. A (Employment Agreement).

[3] At no time did Jordan resign from his employment, management or ownership of NBOA.  **See** Decision and Verdict, 12/20/21, at 2-3.

and Restated Bylaws of NBOA (NBOA Bylaws),[4] Redmond and Jordan had equal power and authority, albeit different titles. Redmond and Jordan agreed that Redmond would have primary responsibility for the corporate finances, and Jordan would have primary responsibility for the operations of NBOA.

Prior to executing the November 1, 2013 Shareholders' Agreement, NBOA's gross annual sales were approximately $365,000.00. In 2014, due to Jordan's contributions, NBOA's gross annual sales increased to roughly $4,000,000.00. From January 2014 until August 4, 2014, NBOA went from making one insurance sale per day, to over 1,000 sales per month.

On August 4, 2014, Redmond unilaterally changed the locks on NBOA's place of business. Redmond did not give Jordan a key, and Redmond posted an armed guard at the entrance so that Jordan could not enter. Since then, Redmond has continuously prevented Jordan from participating in the operations and management of NBOA, refused to provide Jordan with any financial or management information regarding NBOA,[5] kept all earnings, profits, and distributions solely for himself, publicly claimed to be a 100% owner of NBOA, and treated Jordan as a total stranger to NBOA, rather than a director or shareholder of NBOA. At no time did the parties amend, modify,

---

[4] The NBOA Bylaws have, at all times, been the controlling documentation in the underlying lawsuit. The NBOA Bylaws have not been superseded or amended. *See id.* at 3. The NBOA Bylaws require unanimous consent from voting shareholders for any action. *See id.*

[5] As we discuss *infra*, Redmond ultimately provided this information during discovery. *See id.* at 4.

or change the Shareholders' Agreement or the NBOA Bylaws. To this date, Jordan officially remains a 50% voting shareholder and director of NBOA.

On August 8, 2014, NBOA filed a writ of summons against Jordan in the trial court, alleging trespass, and an emergency motion for an *ex parte* preliminary injunction. Additionally, NBOA alleged, *inter alia*, that Jordan and NBOA had no employment agreement, but that Redmond had fired Jordan after an argument and physical altercation. **See** Emergency Petition for Preliminary Injunction, 8/8/14, at 1. Jordan was not notified of these proceedings.[6] Ultimately, on August 13, 2014, the trial court granted NBOA's injunction against Jordan, without a hearing, and barred him from entering the NBOA premises and imposing an order that Jordan stay at least 1,000 yards away from NBOA.

Subsequent to these events, and during the pendency of this case, Redmond began lavishly spending NBOA's money. Redmond made numerous purchases using NBOA company funds, including but not limited to visiting strip clubs, buying items from Babies-R-Us, purchasing various pieces of jewelry, and making a notable purchase for $118,907.27 at Neiman Marcus. These purchases and others were made directly from the NBOA General Ledger, were listed as "Redmond's Personal Expenses," and ultimately totaled $604,126.45. In addition, Redmond made numerous cash withdrawals from

---

[6] Redmond was not initially a party to this litigation. As we note *infra*, on December 11, 2014, the parties stipulated to add Redmond, personally, as a party.

NBOA accounts totaling $116,738.00, and wired another $56,000.00 to his mother in Ireland.

Redmond's misuse of funds did not stop. Redmond transferred $361,782.72 from NBOA to a newly-formed company, Bene Market, LLC (Bene Market), in which Redmond is a 96% equity owner. Redmond further transferred the NBOA book of business to Bene Market, which ultimately resulted in the shutdown of NBOA in 2018. In 2017, prior to NBOA's shutdown, Bene Market's gross proceeds rose from $765,545.00 to $17,295,549.00. In lieu of any Bene Market member distributions, Redmond began paying himself guaranteed payments from Bene Market, totaling $2,842,276.00 in 2017, $1,294,182.00 in 2018, and $3,125,623.00 in 2019. Redmond also used NBOA accounts to finance his personal civil defense in **this** litigation, totaling $270,945.05.

The following is a summary of the tortured seven-year history of the proceedings in this case.[7] On October 28, 2014, NBOA filed a complaint against Jordan for breach of contract and defamation. On December 1, 2014, Jordan filed an answer and counterclaims for breaches of contract, violations of the Wage Payment and Collection Law,[8] breaches of fiduciary duty, and for

---

[7] We do not include every single filing from the parties, as they are numerous and unnecessary for our review of Redmond's claims on appeal.

[8] 43 P.S. § 260.1 *et seq.*

a stockholders' appraisal.[9]    On December 11, 2014, NBOA and Jordan stipulated to add Redmond as a party to the suit.  After additional filings, the trial court, on February 2, 2015, granted Jordan's request to compel Redmond to respond to Jordan's interrogatories and request for production of documents within 15 days.  **See** Order, 2/2/15, at 1.  On February 20, 2015, Jordan filed a petition for sanctions, pursuant to Pa.R.Civ.P. 4019, for Redmond's willful failure to comply with the court's February 2, 2015 discovery order.   On February 24, 2015, the trial court issued a rule to show cause, directing Redmond to explain why he had failed to comply with the trial court's discovery order.  **See** Order, 2/24/15, at 1.  Subsequently, on February 26, 2015, the trial court granted Redmond an additional 20 days to comply with the discovery order.  **See** Order, 2/26/15, at 1.[10]

On March 26, 2015, Jordan filed a motion for partial summary judgment, which the trial court denied on April 8, 2015.  The parties subsequently filed a stipulation in which they jointly requested a scheduling order.  On April 13, 2015, the trial court directed:  all written discovery to be completed by July

---

[9] In his complaint, Redmond did not attach the Employment Agreement or NBOA Bylaws.  However, Jordan, in his answer and counterclaim, attached both, as well as the Shareholders' Agreement.  **See** Answer and Counterclaim, 12/1/14, Exs. A, B, C.

[10] In particular, the trial court denied Jordan's petition for sanctions.  **See id.** However, our review of the certified record reveals that Redmond did not file a response to the trial court's February 24, 2015 rule to show cause. Consequently, the trial court's reasons for granting an additional 20 days on February 26, 2015, are unclear.

10, 2015; all depositions to be completed by August 25, 2015; all expert witnesses and their respective curricula vitae to be disclosed by August 25, 2015; and expert witness reports to be served by the parties by September 25, 2015. *See* Order, 4/13/15, at 1. On April 27, 2015, Redmond filed a petition to quash discovery into his personal finances, which the trial court granted on April 30, 2015.

In October 2015, the parties filed a second stipulation requesting an amended scheduling order. The trial court ordered all the above discovery requirements be completed no later than February 2016. However, this order was short-lived, as the trial court, on January 14, 2016, issued an order suspending all discovery deadlines.

On May 2, 2016, Redmond sought and was granted a stay in the proceeding pending an investigation by the Pennsylvania Department of Insurance.[11] Before the trial court, Redmond blamed this investigation on Jordan, claiming that Jordan was responsible for all sales from NBOA. On May 27, 2016, Jordan filed a motion for reconsideration of the stay, and the trial court entered an order capping the stay's duration at 90 days without any further extensions. *See* Order, 6/17/16, at 1 (granting Jordan's motion,

_____

[11] In January of 2016, the Pennsylvania Department of Insurance began an investigation into Redmond and NBOA to determine whether Redmond had knowingly permitted unlicensed producers in his agency to sell under the license of other individuals. It is unclear from the record before us whether this investigation was ever closed.

permitting ongoing discovery during stay, and specifying no further extensions would be granted).

During this stay, Jordan sought answers to numerous interrogatories, some of which the trial court had previously directed Redmond answer. Redmond filed an equal number of responses in which he objected and/or declined to answer. On September 16, 2016, the trial court conducted a hearing on Redmond's failures to answer interrogatories and comply with its discovery orders.

After the hearing, the trial court, on September 27, 2016, ordered Redmond to provide full and complete responses to interrogatories and requests for production of documents. *See* Order, 9/27/16, at 1-3. On December 1, 2016, the trial court ordered Redmond to "fully comply" with the September 27, 2016 order within 20 days. The trial court also stated that it would not consider any requests for further delay of trial. On February 28, 2017, Jordan filed a petition for sanctions, in which he informed the trial court that Redmond was still refusing to comply with the trial court's order for discovery of financial books and records of NBOA, including NBOA's General Ledgers for 2015, 2016, and 2017. In response, Redmond claimed that his accountant, Malcolm C. Smith, would not release the data because Smith had not been paid. The trial court conducted a hearing on Jordan's petition for sanctions and, on April 5, 2017, the trial court granted Jordan's petition and ordered that Redmond provide the requested material within two weeks. *See* Order, 4/7/17, at 1. Additionally, the trial court sanctioned Redmond and

ordered that any evidence "not provided within two weeks from the date of this order **will be barred from use in the trial in this matter**." ***See id.*** (emphasis added).

Redmond filed a petition for sanctions against Jordan, which the trial court denied on May 31, 2017. At the same time, the trial court permitted Redmond to secure an expert witness and to propound interrogatories to Jordan. In July of 2017, as a result of the trial court's scheduling conflicts, this case was again delayed. Jordan petitioned for re-scheduling trial, which the trial court granted, but a date was not set. On November 6, 2017, Jordan petitioned to dissolve the August 2014 preliminary injunction that had been granted *ex parte* without a hearing. On March 8, 2018, Jordan petitioned for the trial court to set a trial date, which it had not done since the scheduling conflict in July of 2017. On April 2, 2018, the trial court denied Jordan's November 6, 2017 petition under the doctrine of laches. Jordan filed an interlocutory appeal to this Court.

While Jordan's interlocutory appeal was pending, Jordan, on May 22, 2018, again petitioned for the trial court to set a trial date. On August 3, 2018, the trial court denied the May 22, 2018 petition due to the pending appeal. Consequently, Jordan withdrew his interlocutory appeal and, on September 28, 2018, submitted another petition for the trial court to set a trial date. On October 4, 2018, the trial court granted the petition and set trial for February 25, 2019. On January 28, 2019, the trial court conducted a pre-trial conference, at which Redmond voluntarily withdrew his claim of

defamation against Jordan. *See* Order, 1/28/19, at 1. Additionally, the trial court ordered Redmond to prepare a list of all exhibits and witnesses he intended to present at trial. *Id.*

On February 20, 2019, mere days prior to the start of trial, NBOA filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania. *See* Notice of Bankruptcy Case Filing, 2/21/19, at 1 (notice to trial court that NBOA filed bankruptcy, with case number 19-11045-ref). As a result, on February 21, 2019, the trial court stayed the instant case with regard to any claims involving NBOA, but directed the trial between Jordan and Redmond to proceed as scheduled on February 25, 2019. *See* Order, 2/21/19, at 1-2. Redmond filed a motion to reconsider on February 21, 2019, which the trial court granted on February 22, 2019. *See* Order, 2/22/19, at 1. In particular, the trial court vacated its February 21, 2019 order, cancelled the February 25, 2019 trial date, and noted that trial would be rescheduled. *See id.*

On April 17, 2019, Jordan filed a petition to reschedule the trial date in the instant case. Jordan's petition included the United States Bankruptcy Court's order dismissing NBOA's bankruptcy filing for "fail[ure] to timely file the documents required by the orders dated February 21, 2019[,] and March 7, 2019." *See* Defendant's Pre-Trial Petition, 4/17/19, Ex. A (United States Bankruptcy Court Order, 4/4/19, at 1). On May 17, 2019, the trial court ordered that trial would commence on September 9, 2019. *See* Order, 5/17/19, at 1.

On May 31, 2019, Jordan petitioned the court for leave to take Redmond's deposition on the question of his personal assets for purposes of punitive damages. On July 12, 2019, the trial court granted Jordan's petition and ordered that Redmond be deposed within 45 days of the order and "[b]ecause punitive damages can be sought in this case against [] Redmond, counsel for [Jordan] may conduct discovery involving [] Redmond's personal finances." *See* Order, 7/12/19, at 1. The trial court entered a subsequent order directing Redmond to provide his tax returns to Jordan no later than August 27, 2019. On August 27, 2019, the trial court conducted a teleconference with both parties, during which the trial court became aware that Redmond had not provided his state and federal income tax filings as directed. Consequently, on August 27, 2019, the trial court ordered that "Redmond[] shall provide his tax returns requested by [Jordan] in discovery to [Jordan]'s counsel no later than the close of business today." Order, 8/27/19, at 1. On August 28, 2019, Redmond appeared for his deposition, without his tax returns. Throughout his deposition, Redmond refused to answer questions regarding his personal finances. When Redmond did not provide his tax returns, the trial court, on August 28, 2019, issued another order giving Redmond 24 hours to produce "state and federal income tax returns for the years 2012 to the present . . . before the continued deposition of [] Redmond which [] is scheduled to occur on Friday, September 5, 2019. Failure to comply with this Order will result in significant sanctions[.]" Order, 8/28/19, at 1.

By September 1, 2019, Redmond had refused to respond to the court-ordered discovery regarding his personal finances. On September 3, 2019, a mere six days before trial, NBOA filed a second bankruptcy petition; at that time Redmond still had not complied with the trial court's discovery orders. On September 6, 2019, Jordan moved to sever trial for the parties and proceed immediately with his claims against Redmond. The trial court ordered trial to begin on January 27, 2020. However, the case was ultimately removed to Bankruptcy Court, and the trial court again cancelled the trial date.[12] *See* Order, 1/21/20, at 1.

This case languished until January 6, 2021, when the Bankruptcy Court remanded the case to the Common Pleas Court, so that Jordan "may immediately prosecute his claims against [] Redmond only." Consent Order, 1/6/21, at 1-3.

On February 16, 2021, the trial court scheduled a status conference for April 9, 2021. *See* Order, 2/16/21, at 1. At this time, Redmond had still not provided discovery as ordered more than one year prior. On April 19, 2021, Jordan moved for sanctions due to Redmond's continuing refusal to cooperate in discovery regarding Redmond's personal finances. On May 24, 2021, the trial court scheduled trial for September 20, 2021. *See* Order, 5/24/21, at 1. On June 7, 2021, the trial court granted Jordan's motion for sanctions,

---

[12] The case was removed at the behest of Redmond and his counsel, who filed a petition for removal in the United States Bankruptcy Court. *See* Notice of Filing of Notice of Removal, 1/30/20, Ex. A (containing Redmond's counsels' petition for removal filed in United States Bankruptcy Court).

directing Redmond to, within 10 days, provide full and complete answers to Jordan's August 1, 2019 discovery request and to appear for a second deposition within 30 days. **See** Order, 6/7/21, at 1. The trial court warned that if Redmond failed to comply, the trial court would impose monetary sanctions for attorneys' fees and court reporter costs.

On August 11, 2021, the trial court held a teleconference due to Redmond's refusal to appear in person.[13] On August 12, 2021, Jordan petitioned for sanctions due to Redmond's refusal to appear, which the trial court granted on August 31, 2021. **See** Order, 8/31/21, at 1-3. In particular, the trial court prohibited Redmond from presenting any evidence regarding interrogatories he failed to answer, and from testifying to any evidence that he failed to otherwise disclose in discovery. **See id.** at 2-3. Additionally, the trial court found Redmond to be willfully non-compliant with court-ordered discovery, and willfully non-compliant in failing to appear for depositions. **See id.** at 3. The trial court ordered that Redmond pay $10,484.50 in reasonable attorneys' fees incurred by Jordan within five business days.[14] **See id.** The

---

[13] We note that this teleconference is not transcribed. However, it is clear from the parties' filings and the subsequent trial court orders that Redmond was refusing to appear for depositions for reasons that are unclear from the record. Redmond would later claim his refusals to appear were because of the COVID-19 pandemic. **See** Brief for Appellant, at 28-29.

[14] On October 28, 2021, Jordan filed a petition for entry of judgment, in which he alleged that Redmond had not paid the court-ordered $10,484.50 in attorneys' fees. **See** Petition for Entry of Judgment, 10/28/21, at 1-2. On November 3, 2021, the trial court directed the prothonotary to immediately enter judgment against Redmond. **See** Order, 11/3/21, at 1.

trial court again ordered that trial was to commence on September 20, 2021. *Id.*

Ultimately, Redmond and Jordan proceeded to a non-jury trial on September 20-21, 2021. At the conclusion, the trial court ordered that the parties file proposed findings of fact and conclusions of law. Both parties complied. On December 20, 2021, the trial court adopted almost all of Jordan's proposed findings of fact and issued its verdict. *See* Decision and Verdict, 12/20/21, at 1-14. The trial court determined that Redmond had directly misappropriated $3,698,627.00 from NBOA and misappropriated $11,797,865.00 in assets transferred from NBOA to Bene Market. *See id.* The trial court found that Redmond had obtained a total amount of $15,496,492.00 that was not equally divided with Jordan, as directed under the NBOA Bylaws and the Shareholders' Agreement. *See id.* Ultimately, the trial court returned a verdict in favor of Jordan, sanctioned Redmond, and awarded Jordan $8,105,197.20 in compensatory damages, including prejudgment interest, and also awarded $5,000,000.00 in punitive damages, resulting in a total damages award of $13,105,197.20. *See id.* at 15.

Redmond filed timely post-trial motions, which the Honorable Jeffrey K. Sprecher[15] denied. Redmond, as noted above, filed a timely notice of appeal

---

[15] Prior to the resolution of Redmond's post-trial motion, the Honorable Timothy J. Rowley retired. On January 6, 2022, the case was reassigned to the Honorable Jeffrey K. Sprecher. *See* Order, 1/6/22.

and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained

of on appeal. Redmond raises the following claims for our review:

> 1. Did the trial court err in allowing [] Jordan to amend his counterclaim to add a conversion claim after the statutory limitation period for that claim had expired?
>
> 2. Did the trial court err in entering a sanctions order, dated August 31, 2021[,] . . . which: (a) precluded [] Redmond [] from testifying at trial; (b) precluded Redmond from "calling any witnesses at trial to testify to any matter that is within the reasonably expected personal knowledge of Redmond with the trial court to make the determination of what issues would reasonably be in his personal knowledge;" and (c) allowed Jordan to introduce into evidence at trial Redmond's deposition testimony without calling Redmond to testify[,] regardless of hearsay prohibitions, all as a sanction for not appearing in person for a third deposition by [Jordan] amidst the COVID-19 pandemic?
>
> 3. Did the trial court err in granting Jordan's [p]etition for [j]udgment, which sought to convert to a judgment in favor of nonparty Cornerstone Law Firm (Jordan's counsel) the $10,484.50 sanction entered against Redmond by the trial court in its August 31, 2021 [o]rder?
>
> 4. Did the trial court err in allowing Jordan to testify on expert financial matters pertaining to the business, on which he lacked personal knowledge and was not qualified as an expert to address?
>
> 5. Did the trial court err in rejecting the expert testimony of Redmond's expert accountant regarding the valuation of the business and the nature of distributions to Redmond despite Jordan's failure to present a countering expert?
>
> 6. Did the trial court err in adopting Jordan's complex financial findings and conclusions regarding conversion and damages without requisite expert testimony or record support? [16]

---

[16] We note that Redmond has waived his sixth claim for failure to include it in the argument section of his appellate brief. ***See McEwing v. Lititz Mut. Ins.***
*(Footnote Continued Next Page)*

7. Did the trial court err in awarding excessive compensatory damages that were not rooted in evidence, were not within the limits of fair and reasonable compensation, and were inconsistent with the actual evidence?

8. Did the trial court err in entering a grossly excessive punitive damages award of $5[,000,000.00] based on a conversion claim that was itself time-barred, while including not a single reference to conversion in the findings and conclusions, in violation of [d]ue [p]rocess rights?

Brief for Appellant, at 6-8.

Because Redmond appealed from the judgment entered following a non-jury trial, the following general principles apply to our review:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence[,] we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

_____

***Co.***, 77 A.3d 639, 646-47 (Pa. Super. 2013) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted); ***see also*** Pa.R.A.P. 2119(a) (providing "argument **shall be divided into as many parts as there are questions to be argued**; and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent") (emphasis added). Consequently, we do not address it below.

*Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 92-93 (Pa. Super. 2007)

(quotation and citations omitted).

Preliminarily, we observe that Redmond has waived numerous claims,

which we address first for ease of disposition. For the sake of brevity,

Redmond has waived, in their entirety, his first,[17] third,[18] fourth,[19] seventh,[20]

---

[17] Redmond's first claim, pertaining to Jordan's conversion claim filed in his amended counterclaim, is waived because Redmond did not object to the filing of Jordan's amended counterclaim, and he did not raise this claim in his post-trial motion. **See** Pa.R.A.P. 302(a); Pa.R.Civ.P. 227.1(b)(2) ("Grounds not specific [in the post-trial motion] are deemed waived[.]").

[18] Redmond's third claim, pertaining to the attorneys' fees awarded to Jordan's counsel, Cornerstone Law Firm, based upon Redmond's failure to appear for multiple depositions, is waived for a litany of reasons. Redmond's brief on this issue falls woefully short of our briefing requirements, as it is merely a page in length, does not provide even a boilerplate standard of review, and is replete with bald assertions purporting to characterize the substance of our rules without citation to those rules. **See McEwing**, **supra**. Moreover, Redmond did not file any objections to this sanction prior to trial, nor was this issue contained within his post-trial motion. **See** Pa.R.A.P. 302(a); Pa.R.Civ.P. 227.1(b)(2).

[19] Redmond's fourth claim, arguing that Jordan improperly testified to "expert financial matters" over Redmond's "repeated objections" is likewise waived. In his brief, Redmond cites to a series of exchanges in the trial transcript, purportedly containing his objections. **See** Brief for Appellant at 31-33. However, upon review of the record, it appears that these citations contain either **no objection** or objections that Redmond himself **withdrew**. Consequently, the record reflects that Redmond did not object to Jordan's testimony and, therefore, this claim is waived as well. **See** Pa.R.A.P. 302(a).

[20] Redmond's seventh claim, purportedly pertaining to the trial court's calculation of compensatory damages, is waived for several reasons. **See** Brief for Appellant, at 34-36. First, this claim is labeled in the argument section as "V" in violation of Rule 2119(a). **See** Pa.R.A.P. 2119(a). Additionally, Redmond's argument here does not pertain to compensatory

*(Footnote Continued Next Page)*

and eighth[21] claims for either failing to preserve them before the trial court, failing to properly raise them in his either his pre-trial motions or post-trial motions, or for failing to adhere to our briefing requirements. *See* Pa.R.A.P. 302(a) ("[I]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal."); Pa.R.Civ.P. 227.1(b)(2); Pa.R.A.P. 2119(a); *see also McEwing*, *supra*.

In his second claim, Redmond raises three sub-issues. First, Redmond argues that the trial court erred by precluding him from testifying in his own

_____

damages at all. Rather, Redmond argues that the trial court erred in awarding compensatory damages because Jordan's counterclaim was time-barred. *See* Brief for Appellant, at 34-36; *see also* Pa.R.A.P. 2119(a). As we discussed *supra*, Redmond's argument regarding Jordan's counterclaim has been waived for failing to raise it before the trial court. *See* Pa.R.A.P. 302(a). Importantly, other than making bald and vague statements regarding fiduciary duties, Redmond does not cite to anything in the record or any relevant case law to support his purported challenge to the trial court's compensatory damage calculations. *See McEwing*, *supra*; *see also* Pa.R.A.P. 2119(a). Consequently, we will not review Redmond's attempts to re-hash the waived argument in his first claim.

[21] Redmond's eighth claim, pertaining to the trial court's award of punitive damages, is waived on several grounds. First, in violation of Pa.R.A.P. 2119(a), Redmond labels this claim in his argument section as "VI" and it is titled as a challenge to the trial court's calculation of compensatory damages. *See* Brief for Appellant, at 36; *see also* Pa.R.A.P. 2119(a). Second, despite Redmond's boilerplate citations to our standard of review and assertions regarding which claims could and could not support punitive damages awards, Redmond provides no citations to the record or any relevant case law supporting his claim. *See* Pa.R.A.P. 2119(a); *Johnson*, *supra*.

Moreover, we observe that Redmond asserts that this claim should prevail because Jordan's conversion claim was time-barred. *See id.* at 39. However, as we noted *supra*, Redmond has previously waived that challenge and we will not address this underlying claim. *See* Pa.R.A.P. 302(a); Pa.R.A.P. 2119(a).

defense. *See* Brief for Appellant, at 26-30. Second, Redmond asserts that the trial court abused its discretion in its August 31, 2021 sanctions order where Redmond purports he had made the reasonable request of conducting his depositions by video. *Id.* Redmond contends that, at the time, the COVID-19 pandemic was at its height and that his own counsel had already contracted the virus. *Id.* In support of this claim, Redmond relies on affidavits, attached to his post-trial motions, that his trial counsel was sick. *Id.* Third, Redmond contends that the trial court erred in allowing Redmond's previous depositions to be entered into evidence. *Id.* at 29.

Redmond's third sub-claim, that the trial court erred in allowing previous depositions to be entered into evidence, is waived, as he did not object to the admission of these transcripts at trial. *See* Pa.R.A.P. 302(a). Additionally, regarding Redmond's second sub-claim that his counsel had COVID-19, we find this argument waived as well. Redmond relies on affidavits attached to his December 30, 2021 post-trial motion. We find these affidavits to be an attempt to improperly raise a new ground in a post-trial motion that should have been raised in a timely objection pre-trial, in violation of Rule 227.1(b)(1).[22] *See* Pa.R.Civ.P. 227.1(b)(1) (errors not preserved by timely pre-trial objections may not be grounds for post-trial relief).

_____

[22] Moreover, as we noted *supra*, the transcripts of this teleconference are not contained within the certified record and, therefore, there is nothing for us to review. The record and Redmond's brief are entirely silent as to where Redmond purportedly requested remote deposition as a result of the COVID-
*(Footnote Continued Next Page)*

Turning to Redmond's first sub-issue, that the trial court abused its discretion in precluding his testimony, Redmond argues that the trial court's sanction had the same effect as dismissing the entire action. **See** Brief for Appellant, at 26-27.

We are mindful that, in reviewing a trial court's imposition of sanctions due to a party's failure to comply with a discovery order, the imposition and degree of the sanction is within the discretion of the trial court. **Jacobs v. Jacobs**, 994 A.2d 301, 305 (Pa. Super. 2005). Accordingly, this Court will not disturb such a sanction absent an abuse of discretion. **Id.**

Pennsylvania Rule of Civil Procedure 4019 generally authorizes trial courts to impose sanctions for a party's failure to comply with a discovery order. Rule 4019 provides, in relevant part:

(a)(1) The court may, on motion, make an appropriate order if

(i) a party fails to serve answers, sufficient answers[,] or objections to written interrogatories under Rule 4005;

\* \* \*

(iii) a person, including a person designated under Rule 4004(a)(2) to be examined, fails to answer, answer sufficiently[,] or object to written interrogatories under Rule 4004;

_____

19 pandemic. Accordingly, we are constrained to conclude that this claim was not properly preserved. **See** Pa.R.A.P. 302(a); **see also** Trial Court Statement in *Lieu* of Opinion, 6/1/22, at 1 (concluding lack of teleconference transcript makes review of this claim impossible where alleged facts are not of record).

(iv) a party or an officer, or managing agent of a party or a person designated under Rule 4007.1(e) to be examined, after notice under Rule 4007.1, fails to appear before the person who is to take the deposition;

* * *

(viii) a party or person otherwise fails to make discovery or to obey an order of court respecting discovery.

(c) The court, when acting under subdivision (a) of this rule, may make

* * *

(2) **an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing in evidence designated documents, things[,] or testimony, or from introducing evidence of physical or mental condition**

Pa.R.Civ.P. 4019(a)(i), (iii)-(iv), (viii), (c)(2) (emphasis added).

However, we are mindful that "when a discovery sanction is imposed, the sanction must be appropriate when compared to the violation of the discovery rules." *Steinfurth v. LaManna*, 590 A.2d 1286, 1288 (Pa. Super. 1991). Our Supreme Court has stated that, before determining the general severity and vitality of a discovery sanction, we must examine the following factors:

(1) the prejudice, if any, endured by the non-offending party and the ability of the opposing party to cure any prejudice; (2) the non[-]complying party's willfulness or bad faith in failing to provide the requested discovery materials; (3) the importance of the excluded evidence in light of the failure to provide the discovery; and (4) the number of discovery violations by the offending party.

- 22 -

***City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)***, 985 A.2d 1259, 1270 (Pa. 2009).

In the order denying Redmond's post-trial motion, Judge Sprecher noted that the trial court was authorized to issue this sanction under Pa.R.Civ.P. 4019(c)(2) in light of Redmond's dilatory and contemptuous behavior. ***See*** Order, 3/31/22, at 1-2. We agree.

Based upon our review of the record, summarized above, it is clear that the trial court acted within its discretion in sanctioning Redmond. Redmond, as we highlighted ***supra***, routinely failed to comply with discovery orders spanning approximately seven years of litigation. When he could no longer delay discovery, NBOA conveniently filed bankruptcy, twice, resulting in an automatic stay due to pending litigation in the United States Bankruptcy Court. ***See*** 11 U.S.C.A. § 362(a) (precluding any non-bankruptcy court, including state and federal courts, from continuing judicial proceedings pending against debtor). Further still, Redmond continued to fail to appear for depositions or respond to interrogatories, even in the face of multiple trial court orders compelling him to do the same. Redmond flagrantly disregarded multiple discovery orders, in which he was warned that failure to comply would prohibit him from entering testimony and evidentiary exhibits relevant to the requested discovery. The importance of this evidence was noted by the trial court in its numerous orders, summarized above. Accordingly, we discern no abuse of discretion and grant Redmond no relief on this claim. ***See Jacobs***, ***supra***; Pa.R.Civ.P. 4019(c)(2).

In his fifth claim,[23] Redmond asserts that the trial court improperly disregarded his financial expert's testimony. Brief for Appellant, at 33-34.

We adhere to the following standard of review:

Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013) (en banc). "The fact[-]finder is free to believe all, part, or none of the evidence to determine the credibility of the witnesses." *Samuel Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 39 (Pa. 2011). The trial court may award a new trial "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Haan v. Wells*, 103 A.3d 60, 69 (Pa. Super. 2014) (citation omitted). "In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose

---

[23] We note that this claim is stated as Redmond's fifth claim in his statement of questions involved, *see* Brief for Appellant, at 6-8, but is raised in conjunction with his fourth claim in the argument section of his brief. *See* Pa.R.A.P. 2119(a). Despite this error, we address this claim separately as it was adequately preserved for our review.

a palpable abuse of discretion." ***Id.*** (citation omitted). When a fact-finder's verdict is "so opposed to the demonstrative facts that[,] looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." ***Id.*** (citation omitted).

Here, the trial court did not "disregard" the testimony of Malcolm Smith. Rather, it expressly found Malcolm Smith's testimony to be incredible. Specifically, the trial court found that Redmond "used [] Smith to file tax returns that **Redmond and Smith knew were incorrect**." ***See*** Decision and Verdict, 12/20/21, at 5 (emphasis added). Additionally, the trial court expressly found "Smith was not a credible witness. He provided no credible testimony in support of Redmond. In [] many cases, his own written correspondence contradicted his testimony." ***See id.*** Upon review of the record, we agree. "It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part[,] or none of the evidence." ***Casselli v. Powlen***, 937 A.2d 1137, 1139 (Pa. Super. 2007) (quotation omitted). The trial court's credibility determination was supported by the record and, consequently, we may not disturb that determination on appeal. ***See Estate of Smaling***, ***supra***; ***Fletcher-Harlee Corp.***, ***supra***. Therefore, Redmond is not entitled to relief on this claim.

Based upon the foregoing, we conclude that the trial court did not commit an error of law or otherwise abuse its discretion.

- 25 -

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/29/2023